[Civ. No. 23262.   First Dist., Div. One.   Jan. 12, 1967.]

GEORGE GALANIS et al., Plaintiffs and Appellants, **v.** MERCURY INTERNATIONAL INSURANCE UNDER-WRITERS et al., Defendants and Respondents.

(And 6 other cases.)*

*Alice Johnson v. Mercury International Insurance Underwriters, Civ. No. 23263; Ann Wood v. Mercury International Insurance Underwriters, Civ. No. 23264; Michael John Thompson v. Mercury International Insurance Underwriters, Civ. No. 23265; Clarice Williams v. Mercury International Insurance Underwriters, Civ. No. 23266; Wynsten Margrave v. Mercury International Insurance Underwriters, Civ. No. 23381; Pang Soo Bing Ng v. Mercury International Insurance Underwriters, Civ. No. 23405.

Belli, Ashe, Gerry & Ellison, Melvin M. Belli, Robert L. Lieff and N. Rommel Bondoc for Plaintiffs and Appellants.

Sedgwick, Detert, Moran & Arnold, Luckham, Fenton & Lieber, Richard A. Boyd, Cyril Viadro, Fred G. Fenton and Andrew J. Collins for Defendants and Respondents.

MOLINARI, P. J.—Plaintiffs, the surviving heirs of seven passengers aboard a crashed airplane, appeal from the respective judgments of dismissal entered upon orders sustaining defendants' general demurrers to their complaints without leave to amend.[1] Although the cases of the respective plain-

---

[1] Actually the notices of appeal in all but the *Margrave* case (and even in that case as to respondent Mutual of Omaha Insurance Company) recite that the appeals are from the trial court's orders sustaining defendants' demurrers rather than from the judgments of dismissal. An order sustaining a demurrer is not an appealable order; rather the appeal

tiffs are pending before this court as seven separate appeals, they raise the identical issue, namely, whether plaintiffs' complaints state a cause of action against defendants. Accordingly, we consider them together.

As against defendants, Mercury International Insurance Underwriters, Mutual of Omaha Insurance Company, Fidelity and Casualty Company of New York and Arnold O. Bennett, plaintiffs' complaints in all seven cases alleged as follows:[2] That on May 6, 1964 defendants sold $105,000 worth of life insurance to one Frank Gonzales covering a round trip by airplane from San Francisco International Airport to Reno, Nevada, and return; that this insurance was sold to Gonzales as part of defendants' over-the-counter automatic vending machine sales program; that "although the sale of life insurance to an airplane passenger, covering a specified trip, presents the conspicuous hazard that the passenger will cause the airplane to crash, thus destroying the evidence of his suicide," defendants, in selling this insurance to Gonzales, "negligently failed properly to screen, interview, or otherwise observe . . . Gonzales, who was then and there despondent and bent upon self-destruction, . . ." ". . . negligently failed to check the financial condition of . . . Gonzales . . . [which] financial condition . . . was then and there such that a perfunctory check would have revealed . . . [it] to be very poor," and negligently sold life insurance to Gonzales "far in excess of the amount which . . . [his] financial condition . . . would justify"; that thereafter Gonzales became a passenger on the same Pacific Air Lines, Inc. flight as did plaintiffs' seven decedents; and that as a direct and proximate result of defendants' negligence, the airplane on which said decedents were passengers crashed, killing said

should be taken from the judgment of dismissal. (*Cole* v. *Rush*, 40 Cal.2d 178 [252 P.2d 1]; *Curnott* v. *Holk*, 203 Cal.App.2d 6, 7 [21 Cal.Rptr. 224]; *Evola* v. *Wendt Construction Co.*, 158 Cal.App.2d 658, 660 [323 P.2d 158]; *Collins* v. *City & County of San Francisco*, 112 Cal.App.2d 719, 722 [247 P.2d 362].) However, in view of the court's policy of liberally construing a notice of appeal in favor of its sufficiency (Cal. Rules of Court, rule 1) we construe plaintiffs' notices of appeal as appeals from the judgments of dismissal rather than from the orders sustaining defendants' demurrers. (See *Curnott* v. *Holk*, *supra*, and cases cited therein in support of the proposition that a notice of appeal from such a nonappealable order may be construed as an appeal from the judgment if there is a judgment.)

[2] Each of plaintiffs' complaints also contained a cause of action for wrongful death as against Pacific Air Lines. These causes of action are not involved in these appeals to which Pacific Air Lines is not a party.

decedents and causing plaintiffs to sustain general and special damages.

In each case defendants demurred generally to plaintiffs' complaints, basing their demurrers in part on the ground that the complaints did not state a cause of action. All of these demurrers were sustained without leave to amend,[3] and from the judgments of dismissal entered upon the sustaining of the demurrers plaintiffs appealed.

Viewing the complaints in the instant cases in the light of the well-defined rules which are applicable to our consideration of whether they state a cause of action against defendants, we find that they attempt to state a cause of action founded upon negligence on the basis of defendants' sale of flight insurance to Gonzales without interviewing, screening or observing him and without checking his financial status. Although plaintiffs argue that "the complaints are pregnant with the allegation that . . . the insurance companies should have been on notice that this particular individual, Frank Gonzales, was a potential suicide-murderer," the allegations of the respective complaints amount to no more than a statement that at the time Gonzales purchased flight insurance from defendants he was "despondent and bent upon self-destruction" and that his financial condition was poor. The subject complaints do not, in any manner, allege that defendants knew or should have known of Gonzales' despondency, his predisposition towards self-destruction, or his poor financial condition at the time he purchased the subject flight insurance. Accordingly, we conclude that the subject complaints contain nothing more than allegations as to Gonzales' condition in fact at the time he purchased the insurance plus the further allegations that defendants sold flight insurance to him without screening, interviewing, or observing him or checking his financial condition. Additionally, we note that the allegations in plaintiffs' complaints that the sale of flight insurance "presents the conspicuous hazard that the passenger will cause the airplane to crash, thus destroying the evidence of his suicide" is not an allegation of ultimate fact which must be deemed admitted by defendants' demurrers and must therefore be accepted as true in passing

---

[3]In *Margrave* the complaint as to which defendants' demurrers were sustained was the first amended complaint as amended. In the other six cases the demurrers were sustained as to the original complaints; however, the allegations of these original complaints were essentially identical to the allegations of the first amended complaint as amended in *Margrave.*

upon the sufficiency of plaintiffs' complaints. This statement is not only nothing more than a contention but is also an allegation contrary to generally known facts of which this court may take judicial notice. ▮ It is well settled that a demurrer does not admit contentions, deductions or conclusions of fact or law alleged in the complaint (*Marin* v. *Jacuzzi*, 224 Cal.App.2d 549, 552 [36 Cal.Rptr. 880]; *Howard* v. *City of Los Angeles*, 143 Cal.App.2d 195, 197 [299 P.2d 294]; *Hilltop Properties, Inc.* v. *State of California*, 233 Cal.App.2d 349, 353-354 [43 Cal.Rptr. 605]), nor does it admit allegations contrary to facts of which a court may take judicial knowledge (*Chavez* v. *Times-Mirror Co.*, 185 Cal. 20, 23 [195 P. 666]; *Griffin* v. *County of Colusa*, 44 Cal.App.2d 915, 918 [113 P.2d 270]; *Hilltop Properties, Inc.* v. *State of California, supra*).

▮ In the light of the pertinent properly pleaded allegations of the respective complaints which we are called upon to consider, our inquiry reduces itself to the following question: Can insurance companies that sell life insurance covering a specific airplane flight to a person who subsequently causes the airplane to crash be held liable to the heirs of the suicide-murderer's fellow passengers on the theory that the insurance companies were negligent in selling such life insurance without screening or interviewing the prospective customer and without investigating his financial status? This question, either stated in terms of whether insurance companies have a duty to protect the lives of their customer's fellow airplane passengers by following such an investigatory procedure in selling flight insurance or whether the standard of conduct required of insurance companies by virtue of their duty to protect the lives of their customer's fellow passenger encompasses the making of such an investigation,[4] is essentially a question of law for the court to decide. (*Raymond* v. *Paradise Unified School Dist.*, 218 Cal.App.2d 1, 8 [31 Cal.Rptr. 847]; *Amaya* v. *Home Ice, Fuel & Supply Co.*, 59 Cal.2d 295, 307 [29 Cal.Rptr. 33, 379 P.2d 513]; *Richards* v. *Stanley*, 43 Cal.2d 60, 66-67 [271 P.2d 23]; *Hatch* v. *Ford Motor Co.*, 163 Cal.App.2d 393, 397 [329 P.2d 605]; Prosser on Torts (3d ed.) pp. 207-209; Rest. 2d Torts, § 328B, p. 151.) ▮ More-

---

[4] As to the two differing approaches to this problem, compare *Raymond* v. *Paradise Unified School Dist.*, 218 Cal.App.2d 1, 6, 11 [31 Cal.Rptr. 847]; *Wright* v. *Arcade School Dist.*, 230 Cal.App.2d 272, 276-277 [40 Cal.Rptr. 812] with Prosser, Torts (3d ed.) pp. 148-153, 331; Rest. 2d Torts, §§ 291-293, pp. 54-59.

over, the existence of a duty flowing from defendants to plaintiffs, which duty requires defendants to make such an investigation prior to selling flight insurance, is an essential requisite to negligence liability. (*Raymond* v. *Paradise Unified School Dist., supra,* at p. 6; *Richards* v. *Stanley, supra,* at p. 63.)

The question of whether there existed a duty to interview, screen, observe, and investigate Gonzales before selling him flight insurance upon defendants' part depends for its resolution upon various policy factors which involve a weighing of the risk involved in defendants' conduct as against the utility of their conduct. These factors are set forth with greater specificity in the *Raymond* case as follows: "The social utility of the activity out of which the injury arises, compared with the risks involved in its conduct; the kind of person with whom the actor is dealing; the workability of a rule of care, especially in terms of the parties' relative ability to adopt practical means of preventing injury; the relative ability of the parties to bear the financial burden of injury and the availability of means by which the loss may be shifted or spread; the body of statutes and judicial precedents which color the parties' relationship; the prophylactic effect of a rule of liability; in the case of a public agency defendant, the extent of its powers, the role imposed upon it by law and the limitations imposed upon it by budget; and finally, the moral imperatives which judges share with their fellow citizens. . . ." (P. 8.) (See also Rest. 2d Torts, §§ 292, 293, pp. 56-59; *Amaya* v. *Home Ice, Fuel & Supply Co., supra,* at pp. 309-310.)

In applying the foregoing factors to the instant case we begin by considering the risk involved in selling such flight insurance without investigating the customer's mental attitude and his financial condition. In this regard, we have already indicated that we are disregarding the allegations in plaintiffs' complaints to the effect that the sale of flight insurance presents the conspicuous hazard that the purchaser will cause the plane to crash since this is an allegation contrary to the generally known fact that persons who purchase flight insurance do not ordinarily do so because they intend to cause the plane to crash in order that their beneficiary may collect the insurance. The rarity of insurance as a factor in plane crashes is conceded by plaintiffs, who in their brief cite authority to the effect that of "18 known or

suspected airline bomb incidents world wide in the past 30 years . . . insurance has been established as a possible factor in five. . . .'' When this figure is considered in relation to the extent of present day air travel it is plain that the risk involved in selling insurance without investigation into the mental condition and financial condition of the prospective purchaser is minimal.

This minimal risk must be balanced against the social utility of the insurance company's activity in selling air flight insurance, that is, the benefit which the public derives from being able to purchase such insurance. Plaintiffs argue that there is no social need for such insurance because it is actuarily expensive and because ordinary life insurance covers airline mishaps. The fallacy of this argument is apparent when we compare ordinary life insurance with flight insurance. The very nature of the former generally entails a delay in issuance since it usually requires the submission of applications with a health history, which application is subject to rejection, and in most instances requires a medical examination as a prerequisite. Flight insurance, on the other hand, may be obtained within a few minutes at airports without the necessity of an application, medical examination, or approval of the insurance company before issuance. Flight insurance serves the needs of the hurried traveler who does not have the time to apply for ordinary life insurance; it also fits the needs of the traveler who desires to protect his beneficiary or estate resulting from loss of life in an airplane accident in principal amounts and for rates not available to him under ordinary insurance policies. While the incidence of plane accidents are few in relation to the total number of air miles flown by scheduled airlines, the fact remains that when such accidents occur they usually result in fatalities. It is against this possibility that flight insurance is provided by insurance companies and desired by the air traveler. Finally, we note with relation to the factor involving "the workability of a rule of care, especially in terms of the parties' relative ability to adopt practical means of preventing injury,'' that to impose upon an insurance company selling flight insurance the burden of having to investigate the mental attitude and financial condition of the potential purchaser is obviously unreasonable when we consider the nature of such insurance whose issuance depends upon immediate service to the prospective purchaser. To require such investigation in the light of the

minimal risk involved would be tantamount to removing from the insurance market the type of flight insurance which has achieved public acceptance and upon which the air traveler has come to rely.

On the basis of this analysis involving a balancing of risk versus utility we are led to the conclusion that insurance companies that sell airplane flight insurance cannot be held liable on a negligence theory based upon their failure to screen and interview the prospective purchaser and to investigate his financial condition. Nothing in the cases of *Liberty National Life Ins. Co.* v. *Weldon* (Ala.) 100 So.2d 696, or *Ramey* v. *Carolina Life Ins. Co.*, 244 S.C. 16 [135 S.E.2d 362], cited and relied upon by plaintiffs, compels a different conclusion. In each of those cases policies of life insurance were taken out by one person on the life of another, the person taking out the policies naming himself as the beneficiary. In both cases the persons to whom the policies were issued had no insurable interest in the life of the insured. Thereafter, the insured, at the hands of the person who took out the respective policies, was murdered in one case (*Weldon*) and injured in the other (*Ramey*). Accordingly, suit was brought by the insured in *Ramey* and by the heir of the insured in *Weldon* to recover damages against the respective insurance carriers based on their negligence in issuing the subject insurance policies without ascertaining whether the persons to whom the policies were issued had an insurable interest in the life of the insured. In *Ramey* the appellate court held that the plaintiff's complaint stated a cause of action and that the trial court correctly overruled the defendant's demurrer; and in *Weldon* the judgment against the insurance carriers was affirmed on appeal. These cases are distinguishable from the instant case in two respects. Firstly, in *Ramey* the plaintiff's complaint alleged facts tending to show that the insurance carrier knew or should have known that the person to whom the policy was issued had no insurable interest on the life of the insured; and in *Weldon* evidence as to the insurance carriers' knowledge was adduced at the trial. In the instant cases, on the other hand, plaintiffs' complaints fail to allege that defendants had or should have had knowledge as to Gonzales' intention of causing the airplane on which he and plaintiffs' decedents were passengers to crash. Secondly, the policy considerations in the *Ramey* and *Weldon* cases are obviously different from those in the

instant cases, primarily because of the fact that the sale of flight insurance, unlike the sale of ordinary life insurance, must, by its very nature, be an expeditious process, thereby precluding the insurance companies from conducting an investigation into the financial condition and mental state of the purchaser.

Finally, although we have concluded that the trial court properly determined that plaintiffs' complaints failed to state a cause of action and that therefore defendants' demurrers were properly sustained, we must consider the question of whether the trial court abused its discretion in failing to give plaintiffs leave to amend following the sustaining of defendants' demurrers to their complaints. Such an abuse of discretion exists where, for example, the defect in a complaint, although one of substance, may possibly be cured and the plaintiff has not had a fair opportunity to do so, as where the demurrer is sustained to the plaintiff's first complaint. (*Loper* v. *Flynn*, 72 Cal.App.2d 619, 625 [165 P.2d 256]; *King* v. *Mortimer*, 83 Cal.App.2d 153, 158 [188 P.2d 502]; *Campbell* v. *Veith*, 121 Cal.App.2d 729, 732 [264 P.2d 141]; *MacLeod* v. *Tribune Publishing Co.*, 52 Cal.2d 536, 542 [343 P.2d 36]; *Lingsch* v. *Savage*, 213 Cal.App.2d 729, 739-740 [29 Cal.Rptr. 201, 8 A.L.R.3d 537].) On the other hand, where it is probable from the nature of the defects and the previous unsuccessful attempts to plead that the plaintiff cannot state a cause of action, a general demurrer may be sustained without leave to amend. (*Johnson* v. *Ehrgott*, 1 Cal.2d 136, 138 [34 P.2d 144]; *Ruinello* v. *Murray*, 36 Cal.2d 687, 690 [227 P.2d 251].) With regard to the instant cases, in *Margrave* defendants' demurrers were sustained as to plaintiff's first amended complaint as amended.[5] We do not deem the sustaining of defendants' demurrers without leave to amend in that case to constitute an abuse of discretion since it is evident that even if plaintiff had been given leave to amend his complaint a third time the facts upon which his action was based could not be so stated as to give rise to liability on the

---

[5]This complaint was actually a second amended complaint. The original complaint was amended of course by a pleading designated ''First Amended Complaint For Damages'' to which demurrers were sustained with leave to amend. Thereupon plaintiff filed the subject complaint which he designated ''Amendment to First Amended Complaint For Damages,'' which complaint incorporated every paragraph of the First Amended Complaint with the exception of paragraph VIII which was amended.

part of defendants. Similar principles apply in the other six actions, for although the complaints as to which defendants' demurrers were sustained were plaintiffs' first complaints in these actions, these complaints were actually identical to the first amended complaint as amended in Margrave. ▮ In addition, in these six actions at the hearing upon defendants' demurrers the trial court specifically asked plaintiffs if they desired to amend their complaints. Since plaintiffs answered the trial court in the negative it is apparent that they were unable to more effectively plead their purported cause of action. Under these circumstances the trial court was justified in sustaining defendants' demurrers without leave to amend. (See *Corporation of Presiding Bishop* v. *City of Porterville,* 90 Cal.App.2d 656, 661 [203 P.2d 823] ; *T. E. Connolly, Inc.* v. *State of California,* 72 Cal.App.2d 145, 148-149 [164 P.2d 60].)

The respective judgments are affirmed.

Sims, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 8, 1967. Sullivan, J., did not participate therein. Mosk, J., was of the opinion that the petition should be granted.