[Civ. No. 25227. First Dist., Div. One. Feb. 9, 1970.]

DALE STOPP et al., Plaintiffs and Appellants, v.
MUTUAL OF OMAHA INSURANCE COMPANY et al.,
Defendants and Respondents.

**COUNSEL**

Charles E. Brown, Jr., for Plaintiffs and Appellants.

Richard A. Boyd, Cyril Viadro, Sedgwick, Detert, Moran & Arnold, Andrew J. Collins, Luckham, Fenton & Lieber and Fred C. Fenton for Defendants and Respondents.

**OPINION**

**SIMS, J.**—Plaintiffs and appellants are the surviving husbands, and constitute the sole heirs at law, of two passengers who died in an airplane crash allegedly caused by a fellow passenger who had purchased large amounts of life insurance from the defendant insurers. They have appealed from several judgments of dismissal entered in favor of the insurance companies and the alleged agent of one insurer following the plaintiffs' failure to amend after the several demurrers of the defendants were sustained with leave to amend.[1]

Appellants contend that their second amended complaint, as amended by their third amendment thereto, states a cause of action.[2] They assert,

---

[1] The complaint also contains causes of action against the airline company and others for negligence in the manufacture, maintenance and operation of the plane, and against the City and County of San Francisco for maintaining life insurance vending machines. These defendants are not parties to this appeal or the proceedings leading to it.

[2] In their original second amended complaint filed January 27, 1966, the plaintiffs alleged that the defendant insurers negligently failed to properly screen, interview, otherwise observe or check the financial condition of the errant passenger; and that the defendants created "the conspicuous hazard that the passenger will cause the airplane to crash, thus destroying the evidence of his suicide, . . ." On March 20, 1967, after the decision in *Galanis* v. *Mercury Internat. Ins. Underwriters* (1967) 247 Cal.App.2d 690 [55 Cal.Rptr. 890] became final, the plaintiffs filed their third amend-

"The various insurance companies are joined on this theory: That they sold large amounts of life insurance to Frank Gonzales, an improvident person; that they were under a duty to the public in general and to appellants' decedents in particular to post a written notice and to indicate in bold type on the purchaser's receipt and on the face of the policy, that the policies contained an exclusion or exception whereunder no payment would be made in the event of death or injury caused by a voluntary act of the insured. Such notice should have been posted in a conspicious place visible from the sale area in large type which can be easily read from a distance of eight (8) feet or thereabouts."

In *Galanis* v. *Mercury Internat. Ins. Underwriters* (1967) 247 Cal.App.2d 690 [55 Cal.Rptr. 890], this court ruled, "On the basis of this analysis involving a balancing of risk versus utility we are led to the conclusion that insurance companies that sell airplane flight insurance cannot be held liable on a negligence theory based upon their failure to screen and interview the prospective purchaser and to investigate his financial condition." (247 Cal.App.2d at p. 698.)

Plaintiffs have attempted to meet the challenge of balancing risk versus utility in a well documented brief. It reveals, however, no data showing a greater incidence of life insurance in connection with airplane crashes than that observed in the prior opinion, which recites: "The rarity of insurance as a factor in plane crashes is conceded by plaintiffs, who in their brief cite authority to the effect that of '18 known or suspected airline bomb incidents world wide in the past 30 years . . . insurance has been established as a possible factor in five. . . .' " (*Id.*, at pp. 696-697.) They assert, on the other side of the ledger, that the cost and expense of giving notice of the policy exclusions would not dispense with the availability of the insurance for the traveling public, but would serve to discourage the saboteur. They allege that the defendants were well aware of the existence of a hazard that a passenger might insure himself for the benefit of another and then cause the airplane to crash[3] and that the notice "would diminish the said hazard of homicide or suicide by purchasers of insurance. . . ."

In the prior opinion it was noted: ". . . the allegations in plaintiffs' complaints that the sale of flight insurance 'presents the conspicuous hazard that the passenger will cause the airplane to crash, thus destroying the evidence of his suicide' is not an allegation of ultimate fact which must be deemed

---

ment to that complaint in which they deleted the paragraphs containing the foregoing allegations, and revised and particularized the allegations which had previously suggested the theory advanced on this appeal.

[3]The third amendment appears to have eliminated the allegations (see fn. 2 above) which defined the hazard, but it is assumed that as a conclusion (see text) the content of the allegations may be weighed for its legal effect.

admitted by defendants' demurrers and must therefore be accepted as true in passing upon the sufficiency of plaintiffs' complaints. This statement is not only nothing more than a contention but is also an allegation contrary to generally known facts of which this court may take judicial notice . . . [T]his is an allegation contrary to the generally known fact that persons who purchase flight insurance do not ordinarily do so because they intend to cause the plane to crash in order that their beneficiary may collect the insurance." (*Id.*, pp. 694-695 and 696.)

The allegation that the notice would diminish the hazard is similarly but a conclusion or contention. It is also inconsistent with the abandoned allegation that the crash will serve to conceal the suicide. It is acknowledged that the insurance policies involved all contain an exclusion in the event of suicide within a fixed time. Such an exclusion is in line with general public policy. (See, Ins. Code, § 533; and 28 Cal.Jur.2d, Insurance, § 396, p. 97.) It, therefore, appears that the notice which the insurers have allegedly negligently failed to give is notice of a matter of law and public policy of which members of the public should be cognizant, and that, in any event, it is extremely unlikely that the calculating, determined saboteur would be deterred by the knowledge conveyed by the notice. There is no compelling public policy which requires the *nunc pro tunc* establishment of the standard of care urged by plaintiffs. The question of the propriety of flight insurance and the manner and conditions under which it should be issued is more appropriately the subject of legislative control. (Cf. Civ. Code, § 2984.1, governing the form of conditional sales contracts; and see Ins. Code, § 10295.)

Furthermore, in *Galanis* this court concluded: "We do not deem the sustaining of defendants' demurrers without leave to amend in that case to constitute an abuse of discretion since it is evident that even if plaintiff had been given leave to amend his complaint a third time the facts upon which his action was based could not be so stated as to give rise to liability on the part of defendants." (*Id.*, pp. 699-700.)

In their petition for hearing in the Supreme Court of this state, the unsuccessful plaintiffs in *Galanis* urged, "If the sale of insurance policies by means of an automatic vending machine is not in itself negligence, defendants are negligent in not taking preventive steps in connection with the use of the automatic vending machine. For example, the defendants could have easily placed a sign over the automatic vending machine indicating that if a policy was purchased through the machine and the purchaser committed suicide, in order to have his beneficiaries collect under the policy, the policy was automatically void.

"This notice would have made it clear to any potential suicide-murderer,

that his efforts would have been in vain. The cost to defendants of installing such a sign on each machine would be minimal. It is not sufficient for defendants to have such language placed in the insurance policy itself, since as the District Court of Appeals said, at page 816, that 'the sale of flight insurance, unlike the sale of ordinary life insurance, must, by its very nature, be an expeditious process.' Therefore, due to the lack of time involved, it is not normal for the purchaser of the policy to read the policy before boarding the plane. This problem could be alleviated by placing the sign on the vending machine. Defendants did not even attempt to take such precautions." (1 Civ. 23262, Petition for Hearing, pp. 11-12.) This petition was denied March 8, 1967.

■ It is concluded that the defendants owed no duty to plaintiffs or to the public in general to post a written notice or to indicate in bold type on the purchaser's receipt and on the face of the policy, that the life insurance purchased would not cover death or injury caused by voluntary act of the insured.

The judgments are affirmed.

Molinari, P. J., and Elkington, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 1, 1970.