386 P.2d 400

**COUNTY OF PIMA, a political subdivision of the State of Arizona, Appellant,**

v.

**SOUTHERN PACIFIC COMPANY, a corporation, Appellee.**

**No. 7073.**

Supreme Court of Arizona.

En Banc.

Oct. 30, 1963.

Rehearing Denied Dec. 3, 1963.

Harry Ackerman, Former Pima County Atty., Chevy Chase, Md., Norman E. Green, Pima County Atty., Marvin S. Cohen, Former Chief Civil Deputy County Attorney, Tucson, for appellant.

Boyle, Bilby, Thompson & Shoenhair, Tucson, for appellee.

LOCKWOOD, Justice.

The Southern Pacific Company sued the County of Pima for breach of contract. The trial court entered summary judgment in the amount of $6,935.65 for the Railroad. The County appealed.

The terms and circumstances of the contract itself are not contested. On April 2, 1957, the Board of Supervisors of Pima County entered into a written agreement with the Railroad. In this agreement, the Railroad granted the County the right-of-way for a new highway crossing and promised to prepare the tracks to receive the payment and to install two flashing signals. The County, in return, agreed to reimburse the Railroad for all costs connected with the construction of this crossing, including the cost of furnishing and installing two flashing signals. Because of this contract, the Railroad withdrew its protest to the establishment of this crossing. On July 25, 1957, the Corporation Commission, having been petitioned by the County, officially established the new crossing. The Corporation Commission denied the authority of the County to spend public money for the installation of flashing signals. The Railroad fully performed its contractual obligations and incurred costs amounting to $6,935.65. But the County, on the basis of the Corporation Commission's order, refused to reimburse the Railroad. This action resulted.

The sole question before this Court concerns the validity of this contract. May the County, as consideration for the Railroad's granting of a new right-of-way, voluntarily agree to reimburse the Railroad for furnishing and installing flashing signals at a crossing? The County contends this contract was ultra vires and, consequently, unenforceable even though the Railroad has fully performed. The Railroad, on the other hand, claims the County has sufficient statutory authority to enter such a contract.

 The County has broad contractual powers. See, e. g. A.R.S. §§ 11–201, 11–251, and 12–1111 (eminent domain). But just as the County has been created by statute, so it also has been limited by statute. Certain powers have been withheld from the County and granted exclusively to the Corporation Commission. A.R.S. § 40–337 provides, in part:

"A. No public highway or street shall be constructed across the track of any railroad at grade, nor shall the track of any railroad corporation be constructed across the track of any other

railroad at grade, without the permission of the commission, but this provision shall not apply to the replacement of lawfully existing tracks. The commission may refuse permission or grant it upon such terms and conditions as it prescribes.

"B. The commission shall have the exclusive power:

"1. To determine and prescribe the manner, including the particular point of crossing, and the terms of installation, operation, maintenance, use and protection of each of the crossings.

"2. To alter or abolish crossings.

"3. To prescribe the terms upon which and the proportions in which the expense of the alteration or abolition of the crossing shall be divided between the parties affected or in interest."

The County had no authority, even if approved by the Corporation Commission, to agree to compensate the Railroad for performing its duty regarding crossing protection.[1]

In Maricopa County v. Corporation Commission of Arizona, 79 Ariz. 307, 289 P.2d 183 (1955), this Court held that the Corporation Commission could not force a county to pay half the cost of installing flashing signals at a crossing. While Maricopa County did not determine whether a county could voluntarily agree to bear the cost of installing flashing signals, the Court did touch on a principle which prohibits the expenditure of public money on flashing signals. The Court stated at 312 of 79 Ariz., at 185 of 289 P.2d:

"We are of the view that *the installation of signal devices by the Southern Pacific Company is placed squarely and exclusively upon the shoulders of that company* by the provisions of section 69–228, supra. The commission is therein given authority to order the railroad company to install, use, maintain, and operate appropriate safety or other devices or appliances, including interlocking and other protective devices at grade crossings and junctions and block or other system of signalling. *This authority inescapably carries with it the implied duty of the railroad company to bear all expenses* incident thereto. We find no difficulty whatever in holding that the above-quoted statute is the provision applicable in the instant case and that it was *the intent of the legislature to fix the burden exclusively upon the railroad* company." (Emphasis added.)

1. In 1959 the legislature added § 40–337.01. This section provides for an apportionment of the cost of installation of warning signals at a crossing between "the interested parties" by an agreement or by order of the corporation commission. Since this amendment was not retroactive, it has no bearing on the facts in this case.

The roots of this principle extend back to the nineteenth century when the railroads first developed.

In Chicago, B. & Q. R. Co. v. Chicago, 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1896), the United States Supreme Court was confronted with a dispute between Chicago and a railroad, caused by the opening of a street crossing. Although the Supreme Court held that a railroad should be compensated for the diminution in its right to use its tracks caused by the existence of the street, it stated at 255 of 166 U.S., at 592 of 17 S.Ct., 41 L.Ed. 979:

"The expenses that will be incurred by the railroad company in erecting gates, planking the crossing, and maintaining flagmen, in order that its road may be safely operated,—if all that should be required,—necessarily result from the maintenance of a public highway under legislative sanction, and must be deemed to have been taken by the company into account when it accepted the privileges and franchises granted by the state. Such expenses must be regarded as incidental to the exercise of the police powers of the state."

See also, Franklin County v. Missouri Pacific Railway Co., 210 S.W. 874, 4 A.L.R. 133 (Mo.1919); Chicago & N. W. R. Co. v. Chicago, 140 Ill. 309, 29 N.E. 1109 (1892); Louisville & N. R. Co. v. Louisville, 131 Ky. 108, 114 S.W. 743, 24 L.R.A.,N.S., 1213 (1908); Baltimore v. Cowen, 88 Md. 447, 41 A. 900 (1898); Morris & E. R. Co. v. Orange, 63 N.J.L. 252, 43 A. 730, 47 A. 363 (1899); Chicago, M. & St. P. R. Co. v. Milwaukee, 97 Wis. 418, 72 N.W. 1118 (1897).

■ Arizona owes its citizens the duty of providing safe and convenient highways. From this duty arises the right of public control over public highways. Railroads are public highways. Ariz.Const. Art. 15, § 10, A.R.S. Consequently, in their relations as such to the public, railroads are subject to legislative supervision, even though the interests of their shareholders are private property. Every railroad takes its right-of-way subject to the right of the public to extend public streets and highways across such right-of-way. The Corporation Commission may order the installation of flashing signals at a crossing. The expense in the instant case must be born by the railroad, not by the public. The County did not have the power to agree to spend public money on flashing signals. Consequently, the contract is invalid.

Reversed.

BERNSTEIN, C. J., UDALL, V. C. J., and STRUCKMEYER and JENNINGS, JJ., concurring.