[Civ. No. 33124. Second Dist., Div. Two. Apr. 29, 1969.]

GEORGE M. BREIDERT, as Executor, etc. et al., Plaintiffs and Appellants, v. SOUTHERN PACIFIC COMPANY et al., Defendants and Respondents.

William Katz and Anson & Gleaves for Plaintiffs and Appellants.

Roger Arnebergh, City Attorney, Peyton H. Moore, Jr., Assistant City Attorney, Richard Laskin, Norman L. Roberts, Deputy City Attorneys, Randolph Karr and Walt A. Steiger for Defendants and Respondents.

WRIGHT, J.—This is an appeal from a judgment in favor of respondents (defendants below) Southern Pacific Company, a corporation (hereinafter sometimes referred to as Southern Pacific or Railroad) and the City of Los Angeles, a municipal corporation (hereinafter sometimes referred to as City) and against appellants (plaintiffs below) George M. Breidert, as executor of the estate of George C. Breidert, deceased, Margaret P. Breidert and the G. C. Breidert Co., a corporation (hereinafter sometime referred to as Breiderts). The action in the trial court was for inverse condemnation arising out of the closing of a railroad grade crossing.

This is the second appeal in this litigation. The trial court in the first trial of the matter sustained defendants' demurrer to the plaintiffs' first amended complaint without leave to amend. A judgment of dismissal was entered in favor of both

defendants and said judgment was reversed by the Supreme Court of California in *Breidert* v. *Southern Pac. Co.,* 61 Cal.2d 659 [39 Cal.Rptr. 903, 394 P.2d 719].

The first pretrial conference order directed that a bifurcated trial be held in which the basic legal issues were to be tried by a court sitting without a jury and if plaintiffs prevailed, a trial on the sole issue of the amount of damages would be heard and determined by a jury. The trial court found in favor of defendants and against plaintiffs on the legal issues and entered judgment accordingly. Said judgment is the subject of this appeal. No trial on the issue of damages was held.

### STATEMENT OF FACTS

Breiderts are, respectively, the owners, lessors, and lessees of a parcel of real property improved by a one-story factory building used for the manufacturing of ventilating equipment. The property is zoned for industrial use and is situated at the southeast corner of Vaughn Street and the 100-foot-wide right of way of the Southern Pacific Railroad. San Fernando Road is adjacent to and parallel to the right of way and prior to the closing of the grade crossing on April 3, 1959, an extension of Vaughn Street across the right of way intersected San Fernando Road allowing Breiderts and others ingress and egress to the highway.

The right of way was acquired in fee simple by Railroad in 1877, and on it are located single main line tracks built shortly after the acquisition of the land and which are part of the Southern Pacific Railroad system. For many years, or at least since 1941 which was prior to the acquisition of the real property by Breiderts, a crossing at grade existed over the tracks as an extension of Vaughn Street to San Fernando Road. This crossing was used by the general public as well as by plaintiffs.

Although a stop sign, a street sign and a railroad "crossbuck" were installed at the crossing, the same was neither improved nor maintained according to public street standards nor did it resemble the dedicated areas of Vaughn Street which were surfaced with asphaltic macadam (commonly known as blacktop). The crossing was covered with a temporary surfacing, a mixture of blacktop, rock and oil, and there were portions of the crossing that were not paved at all. At each end the maximum width was 35 feet and 18 feet in the area between and immediately adjacent to the rails. The City at least once or twice a year patched holes in the surfacing at

the edge of the pavement, and on the boundary line of the Southern Pacific property, and several feet into the right of way. Such resurfacing as was done by the City was principally for the control of waters which collected from time to time. It is unknown as to who installed the original surfacing and no evidence was produced showing any agreement between the City and Southern Pacific as to the maintenance of the crossing.

The Public Utilities Commission had never authorized a grade crossing at the extension of Vaughn Street and the railroad tracks nor had the Southern Pacific given any individual or municipality by contract or deed any right to use the crossing. In 1953 the City issued a report to the effect that it desired to convert the Vaughn Street crossing from a private to a public crossing and bring it up to the minimum standards required by the Public Utilities Commission.

On August 3, 1954, the City wrote a letter to Southern Pacific requesting consideration of a proposal to open Vaughn Street as a public crossing, and on May 18, 1955, a deed containing a conditional easement was executed by Southern Pacific and on June 6 of that year was tendered to the City. The conditions in the proffered grant specified that in order to be effective the City and the Southern Pacific would execute an agreement relating to the construction and the maintenance of the grade crossing and further the City would execute the easement. Neither of these acts was done. The City, in a document dated July 25, 1955, from the Director of the Bureau of Right of Way and Land to the Board of Public Works, clearly recognized that rights would accrue under the conditional easement only when the same had been fully executed by the City. The document further specified that if the City should at any time abandon for a period of one year the use of the crossing, Railroad should have the right ''to resume *exclusive possession* of said land, or the part thereof the use of which is so discontinued . . .'' (Italics added.)

Shortly after the tender of the deed, the City started to formulate other plans and in 1957 decided not to make the grade crossing at Vaughn Street into a public crossing nor to improve the same but to open a new crossing at Paxton Street, a public thoroughfare running parallel to Vaughn Street approximately 1,444 feet to the south. In September of 1957, the City filed an application with the Public Utilities Commission for authority to construct Paxton Street at grade across the railroad right of way which said application was granted on March 25, 1958. On October 1, 1958, the City

Council of Los Angeles was requested by the Board of Public Works to return to the Board for forwarding to Southern Pacific the conditional easement deed executed in connection with the proposed improvement of Vaughn Street, the said improvement having been ordered abandoned by the City Council on April 28, 1958. The easement deed was returned to the grantor on November 18, 1958.

The City, upon receipt of the decision of the Public Utilities Commission, proceeded to complete the improvements of Paxton Street grade crossing and the same was opened to the general public on April 1, 1959, and two days thereafter the Vaughn Street crossing was closed by Southern Pacific. On November 17, 1959, Breiderts filed an application with the Public Utilities Commission seeking an order requiring the reopening of the Vaughn Street crossing. The commission ordered a rehearing of the earlier application of the City with respect to the construction of the crossing at Paxton Street, consolidated the same with Breiderts' application and heard the two matters together. On April 4, 1961, the commission issued its order denying Breiderts' application to reopen Vaughn Street and affirmed the application of the City.

Breiderts' property at the time of the closing and barricading of the crossing was improved with a one-story factory building and another building was under construction. A third structure designed for manufacturing was constructed by Breiderts after the closing of the crossing. Ventilating equipment was manufactured thereon and retail operations did not take place on the property.

Breiderts called two witnesses and introduced voluminous documentary evidence. The valuation expert, Earl R. Metcalfe, testified that in his opinion that after the closure the highest and best use of the property was the same as before the closure, i.e., "for general industrial purposes, . . . in accordance with the existing improvements."

He further testified that after the closure the extra distance travelled in reaching Briederts' property for vehicles coming from Los Angeles was approximately one-half mile and for vehicles coming from the north the extra distance was approximately one-half to three-quarters of a mile. Frank Lathrop, public projects engineer for Southern Pacific, testified that he had driven from the Paxton Street intersection at San Fernando Road and that it had taken him two minutes and fifteen seconds to reach Breiderts' property travelling at speeds from 30 to 35 miles per hour. For pedestrians there

was no extra distance involved for although Metcalfe testified that he was uncertain if the busses on San Fernando Road would stop at the barricade crossing, Ross Jones, executive vice-president of Breiderts, testified that the public transportation busses would upon request stop on San Fernando Road at the former extension of Vaughn Street.

Jones further testified that visitors such as engineers, architects and customers who were visiting in the Los Angeles area found the plant more difficult to locate than was formerly the case. He further testified that after the barricade was erected he was required to retain an employee until 4:30 p.m. as pickups of equipment were occasionally delayed. Prior to the closure, no employee had been required to remain after 4 p.m. for such a purpose. Jones denied that the growth of Breiderts' operations was the cause of the retention of the employee for the additional one-half hour. No claim was made that Breiderts' employees were delayed in reaching Breiderts' place of business nor was any claim made that deliveries made by Breiderts' own vehicles were in any way delayed.

### Trial Court's Findings of Fact

Among the findings of fact made by the trial judge are the following:

(1) "Said crossing of the railroad tracks at the extension of Vaughn Street was established and existed solely by permission of the Southern Pacific Company and was not a public street, never having been dedicated for such use by implication, prescription or otherwise." (Finding 6.)

(2) "By reason of the closing of said crossing at the extension of Vaughn Street, vehicular traffic on Vaughn Street can no longer cross directly over the railroad right of way to and from San Fernando Road, but said closing does not substantially impair plaintiffs' [Breiderts'] easement of reasonable access to and from their property to the street upon which said property abuts and to the general system of public streets." (Finding 7.)

### Issues

Breiderts on appeal set forth many issues. The same may all be summarized and dealt with as a portion of three principal issues involving the disposition of this case. These issues are as follows:

(1) Was Finding No. 6 of the trial court that "said crossing . . . was not a public street, never having been dedicated

for such use by implication, prescription or otherwise'' supported by substantial evidence?

(2) Was Finding No. 7 of the trial court that ''. . . said closing does not substantially impair plaintiffs' [Breiderts'] easement of reasonable access to and from their property to the street upon which said property abuts and to the general system of public streets'' supported by substantial evidence?

(3) Was error committed by the trial court, and if so was it prejudicial (a) in refusing to admit testimony relative to the economic impact or the effect upon the value of Breiderts' property, and (b) in refusing to admit a hearsay statement that ''prescriptive rights existed in the crossing.''

### First Issue

(1) The Law of the Case Doctrine

The first issue involves the court's finding to the effect that the crossing was not incorporated within a public street. It is the contention of Breiderts that the Supreme Court decision in *Breidert* v. *Southern Pac. Co.,* *supra,* 61 Cal.2d 659, decided in 1964, ''established that the Vaughn Street crossing was a public crossing.'' That decision of the Supreme Court, Breiderts further contend, ''is binding on the trial court and has foreclosed that issue as the law of the case.''

We are well aware of the principle that ''a decision rendered upon demurrer to the complaint upon a former appeal is the law of the case . . . where the facts are the *same* upon both appeals.'' (*Little* v. *Caldwell,* 112 Cal. 27 [44 P. 340].) (Italics added.)

It is true that in the first amended complaint Breiderts alleged that the Vaughn Street crossing was a public crossing, and this statement for the purpose of the demurrer was admitted to be true. The Supreme Court in reviewing the case also had to assume that the allegation was true. Whether in fact the crossing was a public one was one of the principal issues at the trial, Southern Pacific and City having in their answers denied that the crossing was a public one. The facts adduced at the trial, which is the subject of our review, are not the *same* as those admitted to be true in the previous *Breidert* case. Said decision, therefore, does not constitute the law of the case as to the nature of the crossing.

Furthermore, Breiderts' allegation that the Vaughn Street crossing was a public one is a conclusion of law.

''It is well settled that a demurrer does not admit

contentions, deductions or conclusions of fact or law alleged in the complaint. [Citations.]'' (*Galanis* v. *Mercury International Ins. Underwriters*, 247 Cal.App.2d 690, 695 [55 Cal. Rptr. 890].)

(2) Requirement of Approval of Public Utilities Commission

Since the year 1911, the Public Utilities Commission has had exclusive jurisdiction to establish or abolish public grade crossings. Such powers were conferred upon the commission in sections 1201[1] and 1202[2] of the Public Utilities Code of the State of California.

■ The only reasonable conclusion must be that a grade crossing cannot be legally created unless the approval of the Public Utilities Commission has been first secured. (*City of San Mateo* v. *Railroad Com.*, 9 Cal.2d 1, 3 [68 P.2d 713].)

Received into evidence was a certification of E. H. Gielow, Assistant Secretary of the Public Utilities Commission, to the effect that ''a search has been made of all of the records of the Public Utilities Commission of the State of California since its establishment as the Railroad Commission of California in 1911 for the purpose of ascertaining whether any decision or order of said Commission authorized a crossing at Grade of Vaughn Street and the tracks of Southern Pacific Company, located in the City of Los Angeles, and being Crossing No. B-462.6, but that no such decision or order has been found.'' It is worthy of note that the only references to the Vaughn Street crossing are contained in Decision No. 56398 of the Public Utilities Commission issued March 25, 1958, authorizing the construction of Paxton Street across the tracks of the Southern Pacific on condition that the Vaughn Street crossing be closed. Further reference is contained in Decision No. 61775 issued on April 4, 1961, denying authorization to reopen the Vaughn Street crossing and affirming the decision previously mentioned.

---

[1] ''§ 1201.

''No public road, highway or street shall be constructed across the track of any railroad corporation at grade, nor shall the track of any railroad corporation be constructed across a public road, highway, or street at grade . . . without having first secured the permission of the commission.''

[2] ''§ 1202.

''The commission has the exclusive power:

'' (a) To determine and prescribe the manner, including the particular point of crossing, and the terms of installation, operation, maintenance, use, and protection of each crossing of a . . . public or publicly used road or highway by a railroad . . .

'' (b) To alter, relocate, or abolish by physical closing any such crossing heretofore or hereafter established.''

The evidence was uncontradicted that Southern Pacific had never given any individual or municipality by contract or deed any right to use the extension of Vaughn Street across the tracks. The evidence did disclose that a conditional easement deed was tendered by the Southern Pacific to City on June 6, 1955. Even if said deed had been accepted by the City such would not have been sufficient to establish a public crossing. The approval of the Public Utilities Commission was a prerequisite to the construction of any such public crossing.

"Judicial decisions have established that the subject of railroad grade crossings is a matter of statewide concern within the jurisdiction of the Public Utilities Commission and that it does not come within the field of municipal affairs. [Citations.]" (*City of Union City* v. *Southern Pac. Co.*, 261 Cal.App.2d 277, 279 [67 Cal.Rptr. 816].) (Petition for hearing denied by the Supreme Court, June 11, 1968.)

Under the facts of the case, Breiderts had not an easement but only a license to cross the right of way, which said license was subject to revocation. This gave no compensable property rights to Breiderts. (*People* ex rel. *Dept. of Public Works* v. *Lundy*, 238 Cal.App.2d 354 [47 Cal.Rptr. 694].) Had the crossing been a public easement, and we do not so hold, that fact alone would not have entitled Breiderts to damages for the taking of the easement as they had no property right in a public crossing. (*Breidert* v. *Southern Pac. Co.*, *supra*, 61 Cal.2d at p. 668, fn. 8; *City of San Mateo* v. *Railroad Com.*, *supra*, 9 Cal.2d 1.)

(3) Claim of Prescriptive Rights

We now direct our attention to that portion of the court's finding to the effect that the crossing was not a public street through prescription. ▮ As stated in *Staggs* v. *Atchison, Topeka & S.F. Ry. Co.*, 135 Cal.App.2d 492, at page 506 [287 P.2d 817], "[A] railway right-of-way is such a public way as to prevent the acquisition of a prescriptive title to or easement over any part thereof in favor of private persons, and such use of the paths and tracks must be deemed permissive. [Citations.]"

Breiderts cite several cases in support of their contention that the public can acquire an easement to a crossing by a prescription. None of the cases cited by Breiderts support their position. *Central Pac. Ry. Co.* v. *County of Alameda*, 212 Cal. 348 [299 P. 75], involved a dispute between the railroad and the County of Alameda over a public highway which was originally laid out and declared to be such in 1859, some

three years prior to the Pacific Land Grant Act whereby the railroad was granted a right of way 400 feet wide across government lands. Such grant embraced within its boundaries part of the land occupied by the Alameda County highway. A flood in 1910 necessitated the reconstruction and relocation of a portion of the highway. In 1925, the railroad brought action to oust the county and to secure a decree establishing title in fee simple. The county's answer contended that by virtue of the facts of the particular case, an easement by reason of necessity had been acquired. The court so found. Interpretation of a Congressional Act of 1875 was also involved. The encroachment was longitude only; no crossing was involved.

*Southern Pac. Co.* v. *City of Pomona,* 144 Cal. 339 [77 P. 929], involved a dispute between a railroad and the City of Pomona where plaintiff railroad attempted to enjoin defendant city from interfering with the laying of tracks which would obstruct one of the principal streets of the municipality. Defendant city in its answer set up title as highways and prayed for a decree quieting title. The court found the facts in favor of defendant City and this again involved a dispute as to whether the highway had been laid out prior to the time the railroad took title. This case cannot support plaintiffs' position. In addition, the case was decided in 1904, some seven years prior to the adoption of Public Utilities Code sections 1201 and 1202 referred to previously.

(4) Substantial Evidence to Support Findings

Evidence presented by Breiderts that the crossing had long been used by the public, that certain signs had been erected, that certain portions of the crossing had been paved and that a conditional easement deed had been delivered to the City are insufficient to establish that a public railroad grade crossing existed when weighed against the evidence presented by Southern Pacific and City. The evidence that Southern Pacific had never given any individual or municipality by contract or deed, any right to use the crossing, the evidence of a tender of a conditional easement deed by the Southern Pacific, its rejection and return by the City, and evidence of the lack of consent of the Public Utilities Commission is far more compelling. Such evidence supports the contentions of Southern Pacific and City that the crossing was a private one and that such permissive rights as the Southern Pacific may have extended to the general public were revoked pursuant to the mandatory order of the Public Utilities Commission and the erection of the barricades as previously set forth. There is substantial evidence to support the finding of

the trial court. No right to compensation accrued to Breiderts by the closure of the crossing.

## Second Issue

 Breiderts contend that there was no substantial evidence to support Finding 7 of the trial court to the effect that Breiderts did not suffer any substantial impairment of access. By reason of our conclusion that the crossing was a private one and not a public one as set forth, *supra,* this issue is moot. However, as the substantial impairment of access was the principal claim at the trial and was determined by the trial judge in favor of Southern Pacific and City, we will also review the evidence presented at the trial.

 Whether there has been substantial impairment of access is a mixed question of law and fact to be determined by the trial judge before submitting the question of damages to the jury in the event the court decides that there is substantial impairment. (*People* v. *Russell,* 48 Cal.2d 189 [309 P.2d 10]; *People* v. *Ricciardi,* 23 Cal.2d 390, 402-403 [144 P.2d 799]; *Rose* v. *State of California,* 19 Cal.2d 713, 729 [123 P.2d 505].)

The mere fact that Breiderts' property has been placed in a position similar to a cul-de-sac does not of itself create a showing of substantial impairment of access. (*People* v. *Symons,* 54 Cal.2d 855, 861 [9 Cal.Rptr. 363, 357 P.2d 451].) Certain allegations contained in Breiderts' first amended complaint set forth matters which are no part of a cause of action based on impairment of access. As stated in *Breidert* v. *Southern Pac. Co., supra,* 61 Cal.2d at page 667: ''We note, however, that certain of the complaint's allegations incorporate items of possible damage wholly immaterial to a cause of action for impairment of the easement of access. Thus plaintiffs' claims of lost good will and inability to obtain employees, insofar as they relate to loss of business rather than diminution of the value of plaintiffs' real property, do not constitute legitimate elements of damage.''

The court also pointed out that Breiderts' allegation regarding the effect of the closing of the Vaughn Street crossing upon the general public did not constitute a compensable loss to a private landowner and also pointed out the allegations referred to matters which were too speculative to produce compensable loss.

Justice Tobriner, speaking for the court, set forth the rule as follows: ''In summary, the rule which emerges constitutes

one of substantial impairment of the right of access. Although destruction of access to the next intersecting street in one direction constitutes a significant factor in determining whether the landowner is entitled to recovery, it alone cannot justify recovery in the absence of facts which disclose a substantial impairment of access.'' (*Breidert* v. *Southern Pac. Co., supra,* 61 Cal.2d at pp. 666-667.)

"At a time when the tremendous growth of population of this state compels rerouting and rearrangement of streets and highways, the claimed damages to property owners from loss of access to the next intersecting street and to the general system of streets must be more than formal. It must be a true loss; it must be substantial.'' (*Breidert* v. *Southern Pac. Co., supra,* at p. 668.)

The word "substantial" is defined in Webster's New International Dictionary, Second Unabridged Edition, as follows: ''Considerable in amount, value, or the like; as, a *substantial* gain. That is of moment; important; essential; material.''

Based upon the tests hereinabove set forth as enunciated by the Supreme Court, we will now examine the evidence produced by plaintiffs in support of their contention.

Before the closure, Breiderts and employees, customers and members of the public were afforded access to Breiderts' plant from San Fernando Road over a narrow, inadequately constructed and maintained crossing, unprotected by any automatic warning safety devices and determined by the Public Utilities Commission to be among the top 10 percent of the most hazardous railroad crossings in southern California. The opening of Paxton Street crossing a short distance from Vaughn Street provided a modern wide, protected crossing. Pedestrian traffic could still reach Breiderts' property in the same manner as before the closure. Vehicular traffic reaching Breiderts' plant by way of San Fernando Road was required to drive an extra one-half to three-quarters of a mile, necessitating an additional several minutes in transit. As stated in *People* ex rel. *Dept of Public Works* v. *Wasserman,* 240 Cal.App.2d 716, 730 [50 Cal.Rptr. 95]: ''In essence, defendants' [landowners'] complaint is that the only remaining route to the general system of streets and highways, as previously described herein, is longer and difficult to traverse, particularly during peak traffic hours. But this alternate route is only a third of a mile longer. Nor can defendants assert a right to protection from the burdens or

hazards of traffic which they must share with the general public. [Citations.] ''

The only evidence presented by Breiderts in support of their allegation of substantial impairment of access was to the effect that visiting engineers, architects and customers from localities other than southern California found their place of business more difficult to reach than formerly and evidence that Breiderts were required to keep an employee for an additional one-half hour per day to handle pickups. Breiderts' assertion that this was occasioned by the closure of the crossing and not from an increase in their business was not persuasive. At most this claim would be related to additional cost of doing business ''rather than diminution of value of [Breiderts] real property, [and would] not constitute a legitimate element of damage.'' (*Breidert* v. *Southern Pac. Co., supra,* 61 Cal.2d at p. 667; *People* v. *Ricciardi, supra,* 23 Cal.2d at p. 396.)

We conclude that upon the particular facts before us there has been no substantial impairment of access.

### Third Issue

█ Breiderts' further contentions relate to several rulings by the trial court on the admissibility of evidence. They assert that their valuation expert should have been permitted to testify regarding ''impact upon the value'' or ''economic impact'' resulting from the closure. Much of the difficulty occurred because Breiderts' two counsel could not agree upon the type of question being asked. An objection was sustained to a question as to whether or not the closing of the crossing caused the property value to go up or down. The grounds for the objection were that no foundation had been laid for the reasons for a conclusion by the plaintiffs' witness. The ruling was proper. (Evid. Code, § 802.) Another question by Breiderts' counsel was apparently directed to the quantum of impact resulting from the closure. The court interpreted the question as relating to the ''economic impact on the business of plaintiffs,'' and thus not a proper subject of inquiry. In any event no offer of proof was made as to what the witness would testify to if he had been permitted to answer. Such an offer is a prerequisite before this court will disturb the trial court's ruling on appeal. (*People* v. *Asta,* 251 Cal.App.2d 64, 76 [59 Cal.Rptr. 206].)

█ Exhibit 11 was an inter-office memo dated October 17, 1957, from one Southern Pacific employee (a draftsman)

to another employee. The closing paragraph of said memo read as follows:

"Title to Vaughn Street rests in the Southern Pacific Company, and the Public or the City of Los Angeles have prescription rights in and to that portion now being used and travelled." Objection to the introduction of this portion of the exhibit was sustained for the reason that it stated a conclusion as a matter of law. Breiderts contend that the statement should have been received as an admission against interest, an exception to the hearsay rule. The ruling of the trial court was proper.

"The substance of the utterance, and not the form in which it was couched, is the determining factor. The distilled essence of the California rule, . . . is that the declaration or utterance must be one of *fact* and not a conclusion of law, opinion, legal contention, or argument. [Citations.]" (*Fibreboard Paper Products Corp.* v. *East Bay Union of Machinists,* 227 Cal.App.2d 675, 709 [39 Cal.Rptr. 64].)

As stated in the brief of respondent Southern Pacific Company, "In light of all the other evidence in this case, it cannot seriously be urged that a different result would have occurred even if the rejected statement had been received." We agree.

The judgment is affirmed.

Roth, P. J., and Herndon, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied June 25, 1969.