# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-CA-00503-SCT

*MISSISSIPPI EXPORT RAILROAD COMPANY*

*v.*

*MALCOLM E. ROUSE AND EDNA F. ROUSE*

## ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 02/20/2004 |
| TRIAL JUDGE: | HON. JAYE A. BRADLEY |
| COURT FROM WHICH APPEALED: | GEORGE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | RAYMOND L. BROWN |
| | W. FRED HORNSBY, III |
| ATTORNEY FOR APPELLEES: | AUSTIN R. NIMOCKS |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | REVERSED AND RENDERED - 04/13/2006 |
| MOTION FOR REHEARING FILED: | 12/22/2005 |
| MANDATE ISSUED: | |

**EN BANC.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.     The motion for rehearing is denied.  The original opinion is withdrawn and this opinion is substituted therefor.

¶2.     This is a claim of prescriptive easement by private citizens who presented uncontradicted proof of continuous use of a private crossing over active railroad tracks for over fifty years.  The question presented is whether active railroad tracks are "public highways" as provided by Article 7, § 184, of the Mississippi Constitution and, therefore, immune from prescriptive easement.

## BACKGROUND FACTS AND PROCEEDINGS

¶3.　In early March, 2000, Malcolm and Edna Rouse, owners of Deep South Nursery, Inc., purchased approximately twenty acres ("Twenty Acres") in rural George County to expand their 128-acre nursery business. Although no public road adjoins the Twenty Acres, Mississippi Export Railroad Company's ("MERC") right-of-way runs approximately 403 feet along the eastern border with a private dirt crossing over MERC's right-of-way and railroad tracks connecting the Twenty Acres with Karla Road. Deep South receives and delivers plants on 18-wheeler tractors with 46-foot trailers.

¶4.　After the Rouses purchased the Twenty Acres, MERC's Superintendent of Engineering, Willie Evans, set up a meeting to discuss the crossing. Mr. Rouse and Evans met at the crossing to discuss the Rouses' continued use of the crossing. According to MERC, it threatened to remove the crossing unless the Rouses agreed to indemnify MERC for liability claims and pay a share of the maintenance costs related to the crossing.[1] The meeting concluded with no agreement.

¶5.　Shortly thereafter, the Rouses planted approximately 21,000 Crepe Myrtles, Yapon Holly, Deodar Cedar, Foster Holly, and other shrubs to offer for sale upon their maturity. Over the next few years, the Rouses used the private dirt crossing to access the Twenty Acres and care for the plants to prepare them for sale.

---

[1]The Rouses, at trial, admitted they were familiar with the provisions of the indemnity agreement through other landowners, but insisted that MERC never presented them with an indemnity agreement to sign.

2

¶6.	The Rouses heard nothing further regarding the crossing until early 2003, when MERC provided them written notice that the crossing would be removed in thirty days, but that MERC would grant the Rouses a 20-foot easement from the northeast corner of their property along approximately 400 feet of the west side of MERC's right-of-way, to Parker Road. Although the easement granted by MERC provided access for automobiles and pickup trucks, it was unsuitable for 18 wheel tractor trailers.

¶7.	On April 8, 2003, MERC removed the crossing which, according to the undisputed evidence at trial, had been used for access to the Twenty Acres for more than fifty years. This prompted the Rouses to bring suit in the Chancery Court of George County, claiming an easement by prescription, and seeking an injunction against MERC "from entering onto said easement or other property of the Plaintiffs and taking any actions which, in any manner, may interfere with the Plaintiffs' use and occupancy of their easement or right-of-way or business, whether for business or private purpose." The suit demanded damages for tortious interference with their business operations, punitive damages, and court costs.

¶8.	After trial, the chancellor awarded the Rouses an easement by prescription and ordered MERC to promptly restore the removed crossing, but dismissed the Rouses' claim of tortious interference. The chancellor enjoined MERC from disturbing or interfering with the Rouses' use of the easement "so long as same does not disrupt the operation of the railroad's business." From this judgment, MERC appeals. Both the Mississippi Railroad

3

Association and the American Short Line and Regional Railroad Association filed *amicus* briefs.

**ANALYSIS**

¶9.     MERC raises numerous issues on appeal, including an assertion that the Rouses failed to meet their burden of proof as to prescriptive easement.  Because we agree, and today hold that prescriptive easements may not be obtained by private citizens across active railroad lines, we shall address only that issue utilizing a de novo standard of review.  *Gourlay v. Williams,* 874 So.2d 987, 989 (Miss. 2004).[2]

¶10.    This Court has long held that "[t]he rights of the public to the use of the streets and public roads cannot be lost by adverse possession. *Whitherspoon v. Meridian*, 69 Miss. 288, 13 South. 843 [(1891)]; *Briel v. City of Natchez*, 48 Miss. 423 [(1873)]; *Vicksburg v. Marshall*, 59 Miss. 563 [(1882)]." *Mobile & O.R. Co. v. Strain,* 88 So. 274, 277 (Miss. 1921).

¶11.    In Mississippi, railroad tracks are considered public highways.  Article 7, Section 184 of the Mississippi Constitution provides, "[a]ll railroads which carry persons or property for hire shall be public highways, and all railroad companies so engaged shall be common carriers...."

---

[2]We will not address Miss. Code Ann. Section 77-9-253 (Rev. 1999) because it is not applicable to the case sub judice.  The statute would impose a duty on the railroad company to make and maintain a crossing only if the track passed through the Twenty acres, and it is undisputed that it does not here.

¶12.    Thus, because we are constitutionally required to recognize "railroads" as "public highways," and as discussed *infra*, our precedent clearly prohibits a private individual from gaining an interest across a public highway by adverse possession or prescriptive easement, the question presented appears simple. However, as pointed out by the Rouses, this Court has consistently held that a railroad's right-of-way may be adversely possessed. *See e.g. Mobile & O.R. Co. v. Strain,* 88 So. 274 (Miss. 1921); *Paxton v. Railroad Co.*, 76 Miss. 536, 24 South. 536 (1899); and *Wilmot v. Yazoo & M. Val. R. Co.,* 24 So. 701, 76 Miss. 374 (1899). We find this line of cases clearly distinguishable.

¶13.    In *Strain*, the owner of a hotel situated on railroad right-of-way sought title by adverse possession. The *Strain* Court recognized that rights by adverse possession could not be gained across the portion of right-of-way "in actual use," but then stated that as to "lands of a railroad company not actually necessary for the operations of the railroad, title by adverse possession may be acquired." *Strain*, 88 So. 2d at 277. *Strain* clearly stands for the proposition that the portion of railroad right-of-way in actual use, that is, the tracks, is to be treated as a public highway, and title by adverse possession as to a part of the right-of-way may be acquired only if that portion is not being used.

¶14.    The Rouses claim *Alabama & V. Ry. Co. v. Joseph,* 87 So. 421 (Miss. 1921), holds that an individual, corporation, or municipality can acquire a prescriptive right-of-way over an active railroad track. In *Joseph*, the railroad company condemned a strip of land near their railroad tracks and the intersection of Capital and Gallatin streets to improve the

5

intersection's visibility for their engineers. After the railroad condemned the strip of land, the City of Jackson paved Capital and Gallatin streets and part of the condemned strip of land. The public traversed the paved section of the condemned land as part of the roadway.

¶15. The railroad brought suit against the City of Jackson and others to "cancel any claim of ownership" in the strip of land. Although the city did not defend the suit and judgment was entered against it, the Rouses cite in their brief the following language from the opinion:

> The proof does not show that the railroad was excluded from this property at all by the city. The railroad was constantly in use of its tracks, and using the property for the purposes for which it was acquired, and the facts show that both the city and the railroad company were making such use of the strip of ground in question as would not interfere with the railroad's rights. Under these circumstances, the city merely acquired such rights as the use vested in it. That is to say, a mere right of passage over the ground for persons and vehicles and not the right to obstruct or erect any building upon the ground.

*Id*. at 422. According to the Rouses, this language leads to the following conclusion: "[a]ccordingly, this Court ruled that the City of Jackson acquired a prescriptive right of usage, such that persons and vehicles (the public) did have the right to pass over the railroad's tracks as needed." The Rouses' conclusion is curious, indeed, given that the suit in Joseph did not involve a claim of prescriptive easement over the tracks, and that the City of Jackson confessed judgment, losing any claim of easement it might have had. ***Joseph*** stands for the proposition that, even where a party acquires an easement across a railroad's right-of-way (not its tracks), that easement is limited to uses which do not interfere with the railroad's use of its tracks.

6

¶16.    Our decision today is not out of line with other jurisdictions.  The Supreme Court of Virginia reaffirmed its well-established principle that a prescriptive right-of-way cannot be acquired over property being used for a public purpose in *Norfolk and W. Ry. Co. v. Waselchalk,* 244 Va. 329, 421 S.E.2d 424 (Va. 1992).  In this case, a farm utilized a private railroad crossing for many years for agricultural and other related purposes.  Betty Waselchalk decided to establish a mobile home on a portion of the land and use the railroad crossing for access to a public highway.  Upon learning of the crossing's change in use from agricultural to residential, the railroad presented Waselchalk with a crossing agreement that would require her to pay the maintenance costs for a residential crossing.  When she refused to sign the agreement, the railroad closed the crossing.  At trial, the chancellor found that Waselchalk had a prescriptive right to use the crossing.  In finding error in this determination, the Supreme Court of Virginia held that " 'no prescriptive right can be acquired in property affected with a public interest or dedicated to a public use.' *Preshlock v. Brenner*, 234 Va. 407, 409, 362 S.E.2d 696, 697 (1987) (quoting *City of Lynchburg v. Chesapeake and Ohio Ry.*, 170 Va. 108, 116, 195 S.E. 510, 514 (1938))." *Waselchalk*, 421 S.E.2d at 425.

¶17.    For further supporting jurisdictions, see generally *Breidert v. Southern Pac. Co.*, 77 Cal. Rptr. 262 (Cal. Ct. App. 1969); *Dalton Enter., Inc. v. Boston & Marine Corp.*, 709 A.2d 611 (Conn. Sup. 1997); *Louisville & N.R.R. v. Hagan*, 131 S.W. 1018 (Ky. 1910); *Bangor & Aroostook R. Co. v. Daigle*, 607 A.2d 533 (Me. 1992); *Cinncinnati, N.O. & T.P.*

7

*Ry Co. v. Sharp*, 207 S.W. 728 (Tenn. 1918) and *A & M Properties, Inc. v. Norfolk S. Corp.,* 506 S.E.2d 632 (W.Va. 1998).

## CONCLUSION

¶18.    We hold today that a private party may not obtain a prescriptive easement across active railroad tracks, that is, tracks "which carry persons or property for hire."  Under our constitution, such tracks "shall be public highways."  Accordingly, the judgment of the Chancery Court of George County is reversed and rendered.

¶19.    **REVERSED AND RENDERED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., CARLSON AND GRAVES, JJ., CONCUR.  EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ AND RANDOLPH, JJ., NOT PARTICIPATING.**