IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

TUMACACORI MISSION LAND       )
DEVELOPMENT, LTD., an Arizona  )       2 CA-CV 2011-0010
limited partnership,           )       DEPARTMENT B
                               )
            Plaintiff/Appellant, )       O P I N I O N
                               )
            v.                 )
                               )
UNION PACIFIC RAILROAD         )
COMPANY, a Delaware corporation, )
                               )
            Defendant/Appellee. )
                               )

APPEAL FROM THE SUPERIOR COURT OF SANTA CRUZ COUNTY

Cause No. CV09711

Honorable Kimberly A. Corsaro, Judge Pro Tempore

AFFIRMED

Gregory L. Droeger                                       Nogales
                                   Attorney for Plaintiff/Appellant

Beaugureau, Hancock, Stoll & Schwartz, P.C.
  By Anthony J. Hancock and Terrance L. Sims             Phoenix
                                   Attorneys for Defendant/Appellee

E S P I N O S A, Judge.

¶1          In this action to quiet title to an alleged prescriptive easement, plaintiff/appellant Tumacacori Mission Land Development, Ltd. (TMLD) appeals from

the trial court's grant of summary judgment in favor of defendant/appellee Union Pacific Railroad Co. (Union Pacific) on the ground a private party may not acquire a prescriptive easement over a railway. For the following reasons, we affirm.

## Factual Background and Procedural History

¶2 "In reviewing the trial court's grant of a motion for summary judgment, we state the facts in the light most favorable to the part[y] who opposed the motion." *Ammer v. Ariz. Water Co.*, 169 Ariz. 205, 207, 818 P.2d 190, 192 (App. 1991). TMLD owns property abutting Union Pacific's railway. TMLD's principal and employees used a closed, unobstructed railroad crossing to access the property "very frequently, sometimes on a daily basis," for over ten years before Union Pacific obstructed it in 2004 or 2005. TMLD thereafter sued Union Pacific to quiet title, alleging it had obtained an easement by prescription across the railway. The trial court granted summary judgment in favor of Union Pacific, finding that TMLD "cannot obtain any private property interest over [Union Pacific]'s railway because it is a public highway held for public use" under article XV, § 10 of the Arizona Constitution. We have jurisdiction over TMLD's appeal pursuant to A.R.S. §§ 12-120.21(A)(1) and 12-2101(A)(1).

## Discussion

¶3 The entry of summary judgment is appropriate "if the pleadings, deposition[s], answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

2

moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c)(1).[1] "In reviewing a motion for summary judgment, we determine de novo . . . whether the trial court properly applied the law." *Tierra Ranchos Homeowners Ass'n v. Kitchukov*, 216 Ariz. 195, ¶ 15, 165 P.3d 173, 177 (App. 2007).

¶4 TMLD argues the trial court erred in ruling a private party cannot obtain a prescriptive easement over a railway under article XV, § 10 of the Arizona Constitution. That section states:

> Railways heretofore constructed, or that may hereafter be constructed, in this state, are hereby declared public highways and all railroads are declared to be common carriers and subject to control by law. All electric, transmission, telegraph, telephone, or pipeline corporations, for the transportation of electricity, messages, water, oil, or other property for profit, are declared to be common carriers and subject to control by law.

Our constitution thus expressly designates all railways in the state as public highways.[2]

---

[1] Although some facts surrounding TMLD's use of the alleged easement are disputed, none of these facts is material because we conclude the trial court correctly determined that a party may not acquire a prescriptive easement over a railway regardless of the nature and extent of its use. *See* Ariz. R. Civ. P. 56(c)(1).

[2] We find no Arizona authority specifically defining the term "railway." *See, e.g.*, A.R.S. § 40-201 (defining "[r]ailroad" and "[s]treet railroad," but not defining "railway"). We therefore attribute to the word its ordinary meaning. *See Sierra Tucson, Inc. v. Pima County*, 178 Ariz. 215, 219, 871 P.2d 762, 766 (App. 1994). Dictionary definitions of "railway" include "a line of track providing a runway for wheels," *Webster's Ninth New Collegiate Dictionary* 973 (1991), and similarly, "[a] track providing a runway for wheeled equipment," *The American Heritage Dictionary* 1023 (2d college ed. 1982). The definition was similar around the time our constitution, including article XV, § 10, was adopted. *See Webster's New International Dictionary of the English Language* 1765 (1919) (defining "railway" as "[a] line of rails or track providing a runway for wheels . . . sometimes called *railroad*"). We therefore limit our analysis to acquisition of

3

¶5        An easement is a right that one party has to use the land of another for a specific purpose. *Ammer*, 169 Ariz. at 208, 818 P.2d at 193. Ordinarily, a party may obtain an easement by prescription if it can establish that "'the land in question has actually and visibly been used for ten years, . . . the use began and continued under a claim of right, and the use was hostile to the title of the true owner.'" *Spaulding v. Pouliot*, 218 Ariz. 196, ¶ 14, 181 P.3d 243, 248 (App. 2008), *quoting Paxson v. Glovitz*, 203 Ariz. 63, ¶ 22, 50 P.3d 420, 424 (App. 2002) (alteration omitted). However, a party may not acquire a prescriptive easement over a public highway. *See Cracchiolo v. State*, 6 Ariz. App. 597, 600, 435 P.2d 726, 729 (1967) (generally no easement can be acquired over property owned by state, particularly if held for public use); *Calhoun v. Moore*, 69 Ariz. 402, 405, 214 P.2d 799, 801 (1950) (no adverse possession of state land); *Edwards v. Sheets*, 66 Ariz. 213, 217-18, 185 P.2d 1001, 1003-04 (1947) (same); *see also Spaulding*, 218 Ariz. 196, ¶ 24, 181 P.3d at 250 (we apply principles relating to adverse possession and prescriptive easements interchangeably). Thus, to decide whether TMLD may obtain a prescriptive easement, we first must determine whether the trial court correctly interpreted article XV, § 10 in characterizing the railway as a public highway.

---

prescriptive easements across railroad tracks. *See Miss. Export R.R. Co. v. Rouse*, 926 So. 2d 218, ¶¶ 9, 11, 13 (Miss. 2006) (active railroad tracks are public highways under Mississippi Constitution and therefore immune from prescriptive easement). We do not address the question whether a party could acquire a prescriptive easement on railroad property other than the "railway," such as, for example, a path beneath elevated tracks, *see Missouri-Kansas-Texas Ry. Co. of Tex. v. Cunningham*, 273 S.W. 697, 698 (Tex. Civ. App. 1925), or a nonintersecting path parallel to tracks, *see Smith v. Mervis*, 348 N.E.2d 463, 464 (Ill. App. Ct. 1976).

The parties assert, and we agree, that the applicability of article XV, § 10 in determining prescriptive rights over a railway presents a question of first impression.

¶6        The provisions of our constitution are mandatory, Ariz. Const. art. II, § 32, and supersede the common law, A.R.S. § 1-201. When called upon to interpret a constitutional provision, we first examine the provision's plain language; if that language is unambiguous, we generally must follow the text as written. *Jett v. City of Tucson*, 180 Ariz. 115, 119, 882 P.2d 426, 430 (1994). In such cases, "judicial construction is neither necessary nor proper," and we will not consider any extrinsic matter supporting a construction that would vary the provision's apparent meaning. *Id.* Only when the constitutional language is ambiguous or its plain meaning would lead to an absurd result may we look behind the bare words of the provision to determine the conditions that gave rise to it and the effect it was intended to have. *Am. Bus Lines, Inc. v. Ariz. Corp. Comm'n*, 129 Ariz. 595, 598, 633 P.2d 404, 407 (1981).

¶7        TMLD contends the term "public highways" as used in article XV, § 10 is ambiguous because the framers did not intend that this provision "abrogate private property interests," and, pointing to article XV as a whole, which primarily relates to the Arizona Corporation Commission and public service corporations, claims the sole purpose of § 10 is to subject railroads to regulation by the commission. But the clear language of § 10 undercuts that interpretation, expressly designating railways as public highways without any language limiting that designation to regulatory purposes or, for example, declaring railways to be public highways only "for purposes of this section."

5

**¶8** Moreover, if, as TMLD argues, the purpose of § 10 is merely to subject railroads to state regulation, the first portion of the first sentence, declaring railways to be public highways, would be unnecessary and superfluous because the second portion of the sentence, "all railroads are declared to be common carriers and subject to control by law," accomplishes that result standing alone. Ariz. Const. art. XV, § 10; *see City of Tucson v. Clear Channel Outdoor, Inc.*, 218 Ariz. 172, ¶ 33, 181 P.3d 219, 230 (App. 2008) (appellate court will avoid interpretation rendering "'any language superfluous or redundant'"), *quoting Thomas & King, Inc. v. City of Phoenix*, 208 Ariz. 203, ¶ 9, 92 P.3d 429, 432 (App. 2004). And, in the absence of any ambiguity, we do not look to the other sections of article XV for context. *See Ariz. Minority Coal. for Fair Redistricting v. Ariz. Indep. Redistricting Comm'n*, 211 Ariz. 337, ¶ 67, 121 P.3d 843, 862 (App. 2005) (only when constitutional provision unclear do "we consider its effect, consequences, context, and spirit"). However, even reading § 10 in conjunction with surrounding sections of article XV, we find no provision preventing or qualifying the application of § 10 to property rights.

**¶9** TMLD also relies on *Curtis v. Southern Pacific Co.*, 39 Ariz. 570, 571-75, 8 P.2d 1078, 1078-80 (1932), in which our supreme court held that the plaintiffs could acquire a prescriptive easement across a railway if they could prove they had otherwise met the requirements for adverse possession. *See* Ariz. Rev. Code § 2051 (1928).[3]

---

[3]Arizona's currently applicable adverse possession statute, codified at A.R.S. § 12-526, is substantially identical to § 2051.

Although we may not disregard controlling supreme court authority, *see Green v. Lisa Frank, Inc.*, 221 Ariz. 138, ¶ 13, 211 P.3d 16, 23-24 (App. 2009), we do not find *Curtis* controlling here. As in *Green*, the supreme court has not addressed the specific legal issue presented in this case: the application of article XV, § 10 to a party's ability to acquire a prescriptive easement. While article XV, § 10 existed in substantially similar form when *Curtis* was decided,[4] the court did not discuss or even acknowledge that provision, strongly suggesting it never was raised by the parties. *See Jones v. Burk*, 164 Ariz. 595, 597, 795 P.2d 238, 240 (App. 1990) (failure to raise arguments in appellate brief waives consideration).

¶10 Moreover, although *Curtis* is factually similar to this case, more recent decisions of our supreme court guide our resolution of the constitutional issue at hand. In *Calhoun*, the court held that "[t]itle to public highways cannot be acquired by private parties through adverse possession." 69 Ariz. at 405, 214 P.2d at 801. And in *County of Pima v. Southern Pacific Co.*, the court expressly recognized that "[r]ailroads are public highways," citing article XV, § 10. 95 Ariz. 41, 44, 386 P.2d 400, 402 (1963). These holdings thus help lay the foundation for our conclusion that a private party may not

---

[4]In 1980, voters approved an amendment to article XV, § 10, which removed the power of the corporation commission to regulate, *inter alia*, motor carriers and airlines and made other non-substantive changes. *See* Ariz. Sec'y of State, Publicity Pamphlet at 7-10 (1980). But the amendment did not alter the section's applicability to railways or their designation as public highways, which existed when *Curtis* was decided. *See* Ariz. Const. art. XV, § 10 (1928).

7

acquire a prescriptive easement over a railway, notwithstanding *Curtis*'s holding to the contrary, which did not consider the constitutional imperative at issue here.

¶11 TMLD denies the applicability of *Calhoun* and its progeny, asserting that in those cases the land in question was owned by the state, whereas in this case the railway is owned by Union Pacific. This ostensibly colorable argument fails, however, because no such distinction is made in article XV, § 10. Instead, its broad language compels a conclusion that railways, regardless of ownership, are public highways for purposes of determining prescriptive rights. We additionally note that other jurisdictions have interpreted similar constitutional provisions to the same effect. *See, e.g.*, *Miss. Export R.R. Co. v. Rouse*, 926 So. 2d 218, ¶¶ 9, 11, 13 (Miss. 2006) (active railroad tracks are public highways under Mississippi Constitution and therefore immune from prescriptive easement); *A&M Props., Inc.*, 506 S.E.2d at 634-35 (same result under West Virginia Constitution).

¶12 TMLD also contends that this straightforward view of the constitutional provision leads to "absurd results" and offends "the yardstick of common sense." In support, TMLD points to a provision in effect at the time our constitution was adopted requiring "[e]very able-bodied male resident of the territory" to perform two days' labor "on the highways within his district." *See* Rev. Stat. of Ariz., Civ. Code § 3964 (1901). TMLD asserts "the framers could not have intended that by declaring railways to be public highways, . . . such conscription would apply to those railways" because they were the private property of the railroads. But whether railways are highways for the purpose

8

of the conscription statute, and whether such a statute would be constitutional, does not control whether railways are highways for purposes of prescriptive easements. Additionally, considering the enormous importance of railroads to our developing state at that time, and their status, then as now, as public-service corporations, we are not convinced that requiring residents to perform work on railways in addition to other state infrastructure necessarily would have been absurd, particularly during the tenure of that 1901 enactment. As noted in a recent historical account, "'The advance of a railroad into any region [wa]s tantamount to the advance of progress and civilization.'" William D. Kalt III, *Tucson Was a Railroad Town* 15 (2007), *quoting* Ariz. Daily Star, Jan. 22, 1902; *see also* Thomas E. Baker, *Why Congress Should Repeal the Federal Employers' Liability Act of 1908*, 29 Harv. J. on Legis. 79, 81 (1992) (historic importance of railroad as institution of American expansion well known).

¶13 Rather than being viewed as absurd, a plain-meaning interpretation that treats railways as public highways for purposes of determining prescriptive rights is supported by public-policy considerations relating to property held for public use. For example, in *Cracchiolo*, 6 Ariz. App. at 600, 435 P.2d at 729, this court recognized the paramount importance of public use, explaining that generally "no easement can be acquired in property of the State, particularly such property as is held for public use; at least there can be no such right of user by an individual as will interfere with public rights in the property." And, as our supreme court recognized in *County of Pima*, 95 Ariz. at 44, 386 P.2d at 402, because railways are public highways, they "are subject to legislative

9

supervision, even though the interests of their shareholders are private property."[5] Pursuant to such supervision, railroads must serve the public, and their operators have a legal duty to accommodate virtually all shippers and receivers of freight. A.R.S. § 40-326. Accordingly, we agree with Union Pacific that the railway's constitutional designation as a public highway is the primary consideration, even though it is privately owned. *See A&M Props., Inc.*, 506 S.E.2d at 634-35; *cf.* Restatement (Third) of Property (Servitudes) § 2.17 cmt. e, at 271 ("Government-owned land that is held for sale to private parties, rather than held for public uses, may be subject to the acquisition of prescriptive rights, so long as the acquisition does not frustrate the public-policy interests spelled out in this Comment."). And, as further noted by the Restatement, "[t]he public interest in preserving . . . lands devoted to public uses outweighs the claims of prescriptive users." Restatement § 2.17 cmt. e; *see also Tierra Ranchos Homeowners Ass'n*, 216 Ariz. 195, ¶¶ 24-25, 165 P.3d at 179 (Arizona courts look to Restatement for guidance in absence of conflicting authority).

¶14 Finally, contrary to TMLD's assertions, the legal conclusion that railways are not subject to prescriptive easements does not necessarily mean they are highways under any and all conceivable scenarios. Thus, applying the plain meaning of the constitutional provision does not run afoul of "common sense" as claimed by TMLD.

---

[5]Because railroads are common carriers, our constitution deems them "public service corporations," subordinating their private interests to the interests of the public to a greater degree than experienced by other, non-public service corporations. Ariz. Const. art. XV, § 2.

10

**Conclusion**

¶15 Because the express language of article XV, § 10 is unambiguous and does not lead to an absurd result, a private party may not obtain a prescriptive easement over a railway in Arizona. Accordingly, the trial court's grant of summary judgment is affirmed.

/s/ *Philip G. Espinosa*
PHILIP G. ESPINOSA, Judge

CONCURRING:

/s/ *Garye L. Vásquez*
GARYE L. VÁSQUEZ, Presiding Judge

/s/ *Joseph W. Howard*
JOSEPH W. HOWARD, Chief Judge

11