[Civ. No. 7757.   Fourth Dist., Div. One.   Apr. 28, 1966.]

WILLIAM LAVERNE VICE, a Minor, etc., Plaintiff and Appellant, v. AUTOMOBILE CLUB OF SOUTHERN CALIFORNIA, Defendant and Respondent.

Martin F. Roston for Plaintiff and Appellant.

Betts & Loomis and John A. Loomis for Defendant and Respondent.

WHELAN, J.—Plaintiff appeals from a judgment entered for his failure to file a third amended complaint following the sustaining, with leave to amend, of a demurrer made upon general grounds to a second amended complaint.

Defendant and respondent Automobile Club of Southern California (Club) has filed a motion to dismiss the appeal that will be discussed hereafter.

The second amended complaint (complaint) alleged that Club is in the business of issuing motor vehicle liability insurance policies, and, on September 8, 1962, issued such a policy with limits of $100,000 for one person to John Martin Wyne (Wyne) who was, and was then known by Club to be, 87 years of age, totally blind in one eye, having impaired vision in the other eye, partially or totally deaf and not wearing any hearing aid, with major mental or physical disabilities, without a driver's license since 1952, unqualified to obtain such a license and incompetent to operate a motor vehicle; that on September 8, 1962, a motor vehicle, owned, managed, maintained and operated by Wyne collided with plaintiff, then two and one-half years of age, while plaintiff was crossing a public highway as a pedestrian, with resulting injury to plaintiff; that Wyne's operation of a motor vehicle upon the public streets and highways would endanger public safety because of his mental and physical condition; that such fact was known to Club; that said Wyne intended to operate a motor vehicle upon the public streets and highways if Club issued or caused to be issued to him personal injury automobile liability insurance; that Club breached its duty to plaintiff by negligently

issuing or causing to be issued said personal injury automobile liability insurance; that it was foreseeable to Club that when they issued, or caused to be issued, said insurance to Wyne, such insurance would lead him to believe he was qualified to drive, and that he would sooner or later become involved in a motor vehicle accident as a result of such driving; and that said collision with plaintiff was proximately caused by the negligence of Club.

It alleged the following additional matters: that Wyne has made a statement under penalty of perjury in which he said that he operated said motor vehicle because he was insured and he would not have operated said motor vehicle if he had not been insured as herein described; and that his receipt of a letter from Club indicating that he was being insured led him to believe he was duly qualified to drive.

The matters said to have been included in a statement made by Wyne under penalty of perjury are not alleged directly, nor is there any allegation that they were or are true.

There are additional allegations to the effect that it was bad underwriting practice and against the rules and regulations of Club's insurance department to issue a policy to Wyne.

There are additional causes of action in which malice is alleged to support a claim for punitive damages.

Concerning the allegation of negligence in failing to conform to the standards of sound underwriting practice, such failure would be negligence only as to the business interest of Club.[1]

The allegations as to the contents of a statement made by Wyne under penalty of perjury may not be considered as stating any element of a cause of action; the allegation need not be denied and evidence to prove it would be incompetent and immaterial. The allegations are to be disregarded as surplusage. (*McCaughey* v. *Schuette*, 117 Cal. 223, 225 [46 P. 666, 48 P. 1088, 59 Am.St.Rep. 176]; *Ahlers* v. *Smiley*, 11 Cal.App. 343, 346 [104 P. 997].)

Wyne was not a party to the action.

Disregarding some allegations as to the public policy in California and Club's knowledge thereof, we have summarized the matters that appear on the face of the complaint. There are certain underlying assumptions: that motor vehicle liability insurance is issued only for the benefit of those who drive the vehicle or vehicles identified in the policy; an assumption

---

[1] See *Richards* v. *Stanley*, 43 Cal.2d 60, 63 [271 P.2d 23].

patently false. Many people who have never driven a motor vehicle own such vehicles which are driven by relatives or friends of the owners or by hired chauffeurs. Such vehicle owners, even at age 87, are not to be denied the privilege of riding in their chauffeur-driven cars.

It is true, further, that the law of California contemplates that in certain circumstances the issuance of an operator's license must be preceded by the issuance of a valid policy of liability insurance. (See Veh. Code, §§ 16371, 16430, 16431, 16450 and 16451.)

There is an incidental benefit in the possession of such a policy. It affords insurance against damage to the insured by a noninsured vehicle. (Ins. Code, § 11580.2.) Since accident insurance is often denied to persons over the age of 65 years, it is not inconceivable that a person over that age might be willing to pay for such protection under the guise of a motor vehicle liability policy.

In his briefs, plaintiff argues that since Wyne had no right to drive a vehicle, he had no insurable interest; that, therefore, the policy was void (Ins. Code, § 280)[2]; that because the policy was void, Club is liable, under the rule of *Liberty National Life Ins. Co.* v. *Weldon*, 267 Ala. 171 [100 So.2d 696, 61 A.L.R.2d 1346], and *Ramey* v. *Carolina Life Ins. Co.*, 244 S.C. 16 [135 S.E.2d 362], in having held out an inducement to Wyne to injure the plaintiff.

But one need not be the operator of a vehicle to have an insurable interest under a liability policy. (*Osborne* v. *Security Ins. Co.*, 155 Cal.App.2d 201 [318 P.2d 94].) Arguments based upon the theory that the alleged contract was void must be rejected.

We would not say that an insurer might not issue a motor vehicle liability policy under such circumstances as to make it directly liable for damage caused by the negligent driving of the insured. Such might be the case if an insurer should lead an unlicensed and incompetent driver to believe that if he purchased a policy he would have a right to drive without a license, and the applicant did believe that and in reliance upon the insurer's representation did purchase the policy, did drive, and otherwise would not have driven; or, if the appli-

---

[2]At the same time plaintiff argues inconsistently the claim that the contract was void, and incomprehensibly that the contract was for plaintiff's benefit, that the negligence in issuing the contract was a breach of the contract entitling plaintiff to recover, on the theory that he thus comes within the rule stated in *Eads* v. *Marks*, 39 Cal.2d 807 [249 P.2d 257].

cant for insurance independently had such a belief which was communicated to the insurer and the insurer issued a policy without informing the applicant of his error, and the insured, in such belief, drove while he continued to be mistaken as to his right to drive and otherwise would not have driven.

Neither of those situations is shown to exist here, even if there be eliminated the requirement that the insured would not otherwise have driven.

The nearest approach made is the allegation that it was foreseeable to Club that if the insurance were issued Wyne would thereby be led to believe that he was qualified to drive, and that he would sooner or later become involved in a motor vehicle accident.

The rule as to reasonable foreseeability, we assume, is one that is applied after an event to determine the existence of actionable negligence arising out of a precedent negligent act causally-connected with the event, where the precedent act, although negligent, would not give rise to a cause of action absent the subsequent event.

If that assumption be correct, an allegation that the possibility of a certain event was reasonably foreseeable is not enough without an allegation that the foreseeable contingency did in fact occur. ▓ Hence, plaintiff's allegation that Club foresaw that Wyne would be led to believe that he had a right to drive by the issuance of the policy does not necessarily imply that Wyne did believe that. We have dealt with the deficient attempt to make such an allegation by setting out Wyne's written statement to that effect.

The issuance of a liability policy would not ordinarily lead the recipient to believe that it took the place of a driver's license, nor would it be reasonably foreseeable to the insurer that the issuance of a policy would have that effect.

The court should not be required by conjecture to supply a necessary but missing allegation, which, if it had been made, would run counter to reasonable probability, even though it would have to be accepted as true for the purpose of testing the sufficiency of the complaint.

Because of the views expressed herein that liability policies may be issued to persons unlicensed to drive, extended discussion will not be required of plaintiff's argument that section 11624, Insurance Code, and the provisions of sections 2431.5, 2431.8 and 2431.9, title 10, Administrative Code, issued under the authority of section 11624, Insurance Code, make unlawful the issuance of such a policy to a person of Wyne's age and

physical condition. It is likely that the sections cited are not compulsive but were intended to furnish criteria under which an insurer would be permitted to reject an application for insurance under the assigned risk plan.

The second amended cross-complaint did not allege that Wyne operated the vehicle in a negligent manner. Plaintiff answers defendant's objection that the omission is fatal to plaintiff's cause of action by stating: ". . . Wyne's negligence is simply one of the 'plainly probable consequences' of respondent's negligence in issuing insurance to him, and need not be separately pleaded." ██ However, actionable negligence requires something more than a foreseeable possible consequence; it requires the happening of that consequence.

██ A complaint, to be sufficient, must contain a statement of facts which, without the aid of other conjectured facts not stated, shows a complete cause of action. (*Hawkins* v. *Oakland Title Ins. & Guar. Co.*, 165 Cal.App.2d 116, 122 [331 P.2d 742]; see also *Going* v. *Dinwiddie*, 86 Cal. 633, 637 [25 P. 129].)

Plaintiff's complaint sounds in negligence: absolute liability or liability without fault is not involved. Nor is the theory of liability one based upon the bringing into existence of a foreseeably, potentially dangerous condition that is rendered harmful by the action of another to whom the facts creating the hazard are not apparent[3] or who is not capable of apprehending the hazard.[4]

Plaintiff's theory of liability seems to place defendant's act upon one of the three following bases of liability:

(a) Negligence which releases a natural force, such as fire[5] or impounded water, or sets a mechanical chain of events in motion, as by one brick in a row being caused to fall on the next until the last brick is thrown down; or releases an automotive mechanism from all control.

(b) Negligence in entrusting or making available a chattel to a person not deprived of volition, having the ability to take independent decision and action, who is familiar with the nature of the chattel, and whom the supplier knows or reasonably should know to be reckless in the use of, or incompetent to use, the chattel, if the negligent use of such chattel involves risk of bodily harm to the user and others.

---

[3] *Mosley* v. *Arden Farms Co.*, 26 Cal.2d 213 [157 P.2d 372, 158 A.L.R. 872].

[4] *King* v. *Lennen*, 53 Cal.2d 340 [1 Cal.Rptr. 665, 348 P.2d 98].

[5] *Fay* v. *Cox*, 45 Cal.App. 696 [188 P. 623].

(c) Negligence in the furnishing of, or negligently making accessible, a chattel inherently dangerous, to a person ignorant of the nature and dangerous potential of the chattel; such as furnishing caustic acid for transportation without warning as to its nature;[6] or to a person incapable of understanding and appreciating the nature and dangerous potential of the chattel because of infancy,[7] or lack of mature judgment.[8]

■ In charging the first kind of negligence, the assertion of the original negligent act and its consequences should be sufficient. If there is some intervening volitional act of another which results in injury, such as where one, to protect person or property from damage, attempts to put out a fire negligently started, a different problem of pleading, but not of causation, may arise.

■ So, too, in the third class of cases, it is unnecessary to allege negligence on the part of the human agent whose unwitting use of the inherently dangerous chattel immediately caused the damage.

We reject the theory that if the operation of a vehicle by Wyne was proximately caused by the defendant's issuance of the policy, a nonvolitional, causally-connected sequence of events was thus generated.

Equally, we reject the theory that Wyne, so far as the pleadings show, was incapable of appreciating that the operation of a motor vehicle is a potentially dangerous action. An inference may be drawn from the language of the complaint that he did appreciate the possible hazard.

Plaintiff's theory, therefore, brings his cause of action within the general area of the second class of cases discussed. It is true that defendant is not charged as the owner of a chattel who negligently entrusts it to a person known to be reckless or incompetent in its use. But we do not see how he can make his case stronger than a complaint against such an owner can be made.

■ We think that in the second class of cases, the intervention of a volitional agency, capable of deciding whether to act or not to act, and having knowledge of the nature of the chattel, although it does not break the chain of causation, does not give rise to a cause of action against the supplier of the chattel unless the user's negligence has caused the injury complained of. If that be so, the negligent use must be alleged.

---

[6]*McEvoy* v. *American Pool Corp.*, 32 Cal.2d 295 [195 P.2d 783].

[7]*Eads* v. *Marks*, 39 Cal.2d 807 [249 P.2d 257].

[8]*Katz* v. *Helbing*, 205 Cal. 629 [271 P. 1062, 62 A.L.R. 825].

We believe that to be the rule of *Kanananakoa* v. *Badalamente*, 119 Cal.App. 231 [6 P.2d 338] ; *Easton* v. *United Trade School Contracting Co.*, 173 Cal. 199, 200 [159 P. 597, L.R.A. 1916A 394] ; *Rocca* v. *Steinmetz*, 61 Cal.App. 102 [214 P. 257] ; *Hergenrether* v. *East*, 61 Cal.2d 440, 441 [39 Cal.Rptr. 4, 393 P.2d 164] ; *Knight* v. *Gosselin*, 124 Cal.App. 290, 297 [12 P.2d 454] ; and *Owens* v. *Carmichael's U-Drive Autos, Inc.*, 116 Cal.App. 348, 352 [2 P.2d 580]. It is true that in some of those cases the content of the pleadings was not mentioned; but in all of them there was proof of negligent operation.

Under plaintiff's theory, if Wyne merely had driven the vehicle onto the highway, parked it properly and left it so parked, anyone injured by coming into contact with the car in its parked position would have a cause of action against Club, and even if he were himself negligent, contributory negligence being an affirmative defense.

We conclude that negligent operation of the vehicle by Wyne was a necessary element of the cause of action attempted to be stated. The omission of any allegation of such negligent operation or of facts from which it necessarily followed made the second amended complaint vulnerable to a general demurrer.

Plaintiff's claim for punitive damages falls with his claim for compensatory damages. (*Kluge* v. *O'Gara*, 227 Cal.App.2d 207 [38 Cal.Rptr. 607].)

Club's motion to dismiss the appeal is upon the ground that the appeal is moot.

Because we have concluded that the judgment should be affirmed, the motion to dismiss is denied; the judgment appealed from is affirmed.

Brown (Gerald), P. J., and Coughlin, J., concurred.