[Civ. No. 23661.   First Dist., Div. Three.   Apr. 3, 1968.]

MARIE L. MATTHIAS, Plaintiff and Appellant, v. UNITED PACIFIC INSURANCE COMPANY, Defendant and Respondent.

Gonick, Schmid & Bernstein and Harry Gonick for Plaintiff and Appellant.

Hauerken, St. Clair, Zappettini & Hines, John D. St. Clair and Edward J. McFetridge for Defendant and Respondent.

DRAPER, P. J.—The amended complaint alleges that the front stairway to rented premises was defective by reason of variations in height of risers and absence of a central handrail. It asserts that this condition had for a long time been known to the owner; that defendant insurer, with "actual knowledge" of this condition, "negligently aided, abetted, encouraged and induced" the owner to maintain the condition "by selling [owner] a policy of liability insurance," and by "failing to advise, direct or require" the owner to make the stairway safe. Demurrer of defendant insurer to the amended complaint was sustained without leave to amend. Judgment of dismissal followed, and plaintiff appeals. The insured owner is a codefendant, but the cause of action against her is not before us. ██ Rather, we determine only whether mere issuance of the policy subjects the insurer to direct liability to one injured on the stairway.

██ "[A]n indispensable factor to liability founded upon negligence is the existence of a duty of care owed by the alleged wrongdoer to the person injured, or to a class of which he is a member" (*Routh* v. *Quinn*, 20 Cal.2d 488, 491 [127 P.2d 1, 149 A.L.R. 215]; *Richards* v. *Stanley*, 43 Cal.2d 60, 63 [271 P.2d 23]). Negligence also is sometimes defined as "conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm" (Rest. 2d Torts, § 282).

█ But the phrases "duty of care" and "unreasonable risk of harm" by no means provide a workable test of universal application. Able scholars have sought, in vain, to find language to express a working formula which can be derived from the myriad decisions on this difficult subject (see Prosser, *Palsgraf Revisited* (1953), 52 Mich.L.Rev. 1; Green, *The Duty Problems in Negligence Cases* (1928), 28 Colum.L.Rev. 1014, and (1929) 29 Colum.L.Rev. 255). But if none of the tests so far suggested support liability, as we deem to be the case here, the judgment for defendant insurer must be sustained.

█ The most used recent approach to the problem in California treats the issue as a matter of policy involving the balancing of various factors (*Amaya* v. *Home Ice, Fuel & Supply Co.*, 59 Cal.2d 295, 309 [29 Cal.Rptr. 33, 379 P.2d 513]; *Raymond* v. *Paradise Unified School Dist.*, 218 Cal.App. 2d 1, 8 [31 Cal.Rptr. 847]). A core element in this formulation is the "socio-economic and moral factors" (*Amaya* v. *Home Ice, Fuel & Supply Co.*, p. 313) in which consideration is to be given to the "availability of means by which the loss may be shifted or spread" and the "social utility of the activity out of which the injury arises, compared with the risks involved in its conduct" (*Raymond,* p. 8; see Rest. 2d Torts, § 292).

█ As here pleaded, the "activity out of which the injury arises" is the writing of public liability insurance. But the social utility of such an activity is obvious. It assures an injured plaintiff of realization up to policy limits upon any judgment he may obtain against a negligent insured (Ins. Code, § 11580), and it "spreads the loss" among premium payers generally. The desirability of liability insurance is legislatively emphasized by our financial responsibility law and uninsured motorist statute. This strong recognition of the value of liability insurance necessarily minimizes any view that the mere issuance of insurance will in some way encourage creation or continuance of defects in the insured premises or instrumentality.

The risk of negligence by the insured owner is the very risk against which the insurance issues. To accept plaintiff's argument would be to subject the insurer to direct and unlimited liability in every case in which that risk materialized. Such a holding would defeat the social purposes served by insurance.

By making insurance more expensive for the insured, or less attractive to the insurer, it could well tend to limit insurance to the cases in which it serves no purpose—those in which there is no possibility of loss through negligence.

Under the policy test, there is no reason, absent special and unusual circumstances not here pleaded, to find any duty to refrain from issuing such insurance.

Although foreseeability is not the sole, and frequently not the most important, factor in determining duty (*Amaya* v. *Home Ice, Fuel & Supply Co., supra,* 59 Cal.2d 295, 310), we refer to it because it is often mentioned. It seems clear that the insurer had no reason to foresee that the owner would fail to repair or maintain her premises merely because of the issuance of a policy under which it agreed to pay a limited amount of any liability established. (See *Vice* v. *Automobile Club of So. Cal.,* 241 Cal.App.2d 759 [50 Cal.Rptr. 837].) It may be conceded that the insurer was negligent as to itself in insuring a poor risk, but that does not establish a duty to plaintiff (see *Richards* v. *Stanley, supra,* 43 Cal.2d 60, 63). In this sense, the policy is, rather, a windfall to plaintiff in that it assures her of realization upon any judgment she may secure against the insured owner.

If we adopt the ''old words 'proximate' and 'remote,' '' as suggested by one eminent scholar after an exhaustive attempt to find more specific tests (Prosser, *supra,* 52 Mich.L.Rev. 1, 32), we must find too remote any connection between the issuance of the policy and the harm done to plaintiff.

Thus the first breach charged against defendant, the mere issuance of the policy, gives rise to no direct cause of action against the insurer under any test.

The complaint also seeks recovery because the insurer failed to ''advise, direct or require'' the owner to make the stairway safe. ██ But, in the absence of some special relationship (Rest. 2d Torts, § 314A) one is not under a duty to take affirmative action to aid or protect others (*id.,* § 314). Similarly, there is no duty so to control the conduct of another as to prevent him from causing injury (*Richards* v. *Stanley, supra,* 43 Cal.2d 60, 63; Rest. 2d Torts, § 315). ██ The insurer-insured relationship has not been treated as one of those imposing such a duty (Rest. 2d Torts, §§ 316-320; 2 Witkin, Summary of Cal. Law (1960) p. 1501), and there was no relationship between the insurer and plaintiff. We find no

duty of an insurer, save in special circumstances not here present, to "direct or require" either repair or maintenance of insured premises, nor do we find authority in the insurer to compel such acts.

The decision relied upon by plaintiff (*Liberty National Life Ins. Co.* v. *Weldon*, 267 Ala. 171 [100 So.2d 696, 61 A.L.R.2d 1346]) has been criticized (47 Cal.L.Rev. 64). It and a like case not cited (*Ramey* v. *Carolina Life Ins. Co.*, 244 S.C. 16 [135 S.E.2d 362, 9 A.L.R.3d 1164]) are not applicable to the facts before us (*Galanis* v. *Mercury Intl. Ins. Underwriters*, 247 Cal.App.2d 690, 698 [55 Cal.Rptr. 890]).

The absence of any duty here is clear. The question thus is not for the trier of fact, but is one of law for the court (*Amaya* v. *Home Ice, Fuel & Supply Co., supra,* 59 Cal.2d 295, 307-309; *Richards* v. *Stanley, supra,* 43 Cal.2d 60, 66-67). Since we have determined that no duty of care was owed by defendant insurer to plaintiff, we need not consider the issue of proximate cause (Rest. 2d Torts, § 430, com. a). ▮ Defendant has once amended her complaint to meet the precise issue here raised, and has been unsuccessful. There is no showing of any basis for further amendment, and leave to amend was properly denied.

Judgment affirmed.

Salsman, J., and Brown (H.C.), J., concurred.