[Civ. No. 14916. Third Dist. Dec. 1, 1977.]

FIREMAN'S FUND INSURANCE COMPANY et al., Petitioners, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
RALPHA ABRAMSON et al., Real Parties in Interest.

[Civ. No. 14947. Third Dist. Dec. 1, 1977.]

OMNI AVIATION MANAGERS, INC. et al., Petitioners, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
RALPHA ABRAMSON et al., Real Parties in Interest.

## COUNSEL

Bronson, Bronson & McKinnon, Grant P. DuBois, Steven L. Summick, Samuel D. Davis, Rosen, Ross, Fields & Zax and Arnold L. Ross for Petitioners.

No appearance for Respondent.

Fitzwilliam, Memering, Stumbos & DeMers, Craig E. Farmer, Bolling, Pothoven, Walter & Gawthrop and T. D. Bolling, Jr., for Real Parties in Interest.

## OPINION

JANES, J.—Petitioners in these consolidated proceedings seek writs of mandamus directing respondent court to vacate its orders overruling petitioners' demurrers to the 15th through 18th causes of action of real parties' amended complaint against them, and to enter orders sustaining the demurrers.

The underlying action arose out of an aircraft accident which occurred on or about November 26, 1972, in which real parties allegedly sustained personal injuries. The airplane was piloted by defendant Hal Happel, and at the time of the accident was insured by petitioners Fireman's Fund Insurance Co. (Fireman's) and Associated Aviation Underwriters (Associated). That insurance policy was issued in February 1972. For the preceding two years the aircraft had been insured by petitioners Omni Aviation Managers, Inc. (Omni) and Middlesex Mutual Insurance Co. (Middlesex).[1] The aircraft was being purchased by Happel from defendant Donald R. Bates, who was included as an additional insured under the policies by petitioners. The January 31, 1970, lease purchase agreement between Bates and Happel contained, inter alia, the following clauses:

"(3) Purchaser shall assume full financial responsibility for subject aircraft including seller's loan payments, insurance as required by seller . . . .

"(4) Seller may repossess subject aircraft and dispose of [it] as seller sees fit if full financial responsibility is not maintained as stated previously above.

"(5) Purchaser shall become full legal owner when all above financial obligations have been fulfilled."

[1]Petitioners Fireman's and Associated will be referred to collectively as Fireman's, petitioners Omni and Middlesex as Omni.

The policy issued by Fireman's provided that the coverage afforded "shall not apply while the aircraft is in flight by other than the following pilots:

"Any person having a certificate from the Federal Aviation Agency designating him a private or commercial pilot, airplane category, with a single engine land rating and to have minimum of 1,000 total-logged flying hours, including at least 50 hours in the make and model aircraft insured hereunder." Such exclusion is expressly permitted by Insurance Code section 11584, subdivisions (2) and (3).[2]

Omni's policy set forth on the declarations page a standard preprinted pilot clause which precluded coverage when the plane was operated by one not meeting the following criteria:

"7. PILOT CLAUSE: Only the following pilot or pilots holding valid and effective pilot and medical certificates with ratings as required by the Federal Aviation Administration for the flight involved . . .:

"HAL HAPPEL, a Private Pilot"

The 15th and 16th causes of action of the amended complaint set forth real party Ralpha Abramson's claim against petitioners Fireman's and Omni, the 17th and 18th real party Robert Abramson's claim against the same petitioners. The four causes of action seek to impose direct liability in tort upon petitioners for the injuries suffered by real parties because of petitioners' issuance to Happel of aircraft insurance without first investigating his qualifications as a pilot. Happel, at the time of the accident, held only a student pilot's certificate.

---

[2]Section 11584 provides as follows:

"No policy of insurance issued or delivered in this state covering any loss, expense or liability arising out of the ownership, maintenance, or use of an aircraft shall exclude or deny coverage because the aircraft is operated in violation of federal or civil air regulations, or any state law or local ordinance.

"This section does not prohibit the use of specific exclusions or conditions in any such policy which relates to any of the following:

"(1) Certification of an aircraft in a stated category by the Federal Aviation Administration.

"(2) Certification of a pilot in a stated category by the Federal Aviation Administration.

"(3) Establishing requirements for pilot experience.

"(4) Establishing limitations on the use of the aircraft.

"(5) Any person licensed under Division 6 (commencing with Section 11401) of the Agricultural Code with respect to his operation of an aircraft for the purpose of applying pest control materials or substances by dusting, spraying or any other manner whereby such materials or substances are applied through the medium of aircraft."

In their opposition to Omni's demurrer, real parties' discussion of proximate cause clarifies the nature of the alleged tort committed by petitioners: "The proximate cause element is found in the allegations that Bates reserved the right to repossess if the required insurance was not maintained by Happel, that [Omni] would have discovered the lack of a private pilot's license on the part of Happel or other evidence that he was an incompetent, inexperienced and unqualified pilot, that if they had made such discovery they would not have issued their policies, and if they had not issued their policies Bates would have in fact repossessed the aircraft. [¶] If Bates had repossessed the aircraft Happel would not have injured the Abramsons by his negligence and willful misconduct in the operation of the aircraft."

The liability sought to be imposed upon Omni carries with it the added element that, by issuing its policy of insurance, it was responsible for the later issuance of the Fireman's policy. In other words, had Omni not first insured Happel, thus assertedly establishing insurability, Fireman's would not have issued the policy in effect at the time of the accident.

Whether petitioners are entitled to the relief sought turns upon interpretation of *Barrera* v. *State Farm Mut. Automobile Ins. Co.* (1969) 71 Cal.2d 659 [79 Cal.Rptr. 106, 456 P.2d 674]. There plaintiff brought suit against defendant State Farm for payment of a judgment recovered against Anthony and Sandra Alves, who at the time of the subject automobile-pedestrian accident in which plaintiff was injured were insured by State Farm under an automobile liability insurance policy issued a year and a half earlier. Subsequent to the accident, State Farm discovered that in his application Alves had made a material misrepresentation upon which it relied in issuing the liability policy. State Farm denied validity of the policy and cross-complained, seeking a declaration that the policy was void *ab initio* because of Mr. Alves's misrepresentation. Plaintiff Barrera contended that State Farm was estopped to rescind the policy six months after the accident because (1) State Farm had led Mr. and Mrs. Alves to believe they were insured, and (2) it was negligent in failing to discover the misrepresentation within a reasonable time. The trial court ruled in favor of State Farm, holding that it had issued the policy in reliance upon the misrepresentation, that rescission was proper, and that State Farm had acted promptly upon discovery of the misrepresentation.

In reversing the trial court, the Supreme Court recognized the independent duty of an automobile insurer to "undertake a reasonable investigation of the insured's insurability within a reasonable period of time from the acceptance of the application and the issuance of a policy. This duty directly inures to the benefit of third persons injured by the insured." (*Id.,* p. 663.) The court continued: "Such an injured party, who has obtained an unsatisfied judgment against the insured, may properly proceed against the insurer; the insurer cannot then successfully defend upon the ground of its own failure reasonably to investigate the application." (*Ibid.*)

The Supreme Court, discussing the facts of the case, stated: "The evidence suggests that State Farm, in failing to investigate Alves's insurability . . . pursued a policy of saving minor costs on its part at the expense and sacrifice of the interests of its insured and those of the general public who were the potential victims of the insured's negligence. . . . [¶] State Farm's investigative practices may fail to conform to the standard of service which the public may reasonably expect of an insurance company and, more importantly here, may violate the public policy underlying California's Financial Responsibility Law. As we explain hereinafter in more detail, the 'quasipublic' nature of the insurance business and the public policy underlying [that Law] . . . impose upon the automobile liability insurer a duty both to the insured and to the public to conduct a reasonable [and timely] investigation of insurability . . . . We may characterize this duty as one sounding either in tort or quasi-contract. The label is not important. We hold, however, that in order to avoid liability to an innocent victim of the insured the insurer cannot take advantage of a breach of its duty . . . ." (*Id.,* at pp. 667-669, fns. omitted.)

In the lengthy discussion which follows the above quoted material, the court concerns itself with the public policy expressed in the Financial Responsibility Law. On the issue of privity the court draws upon several cases which imposed liability in favor of third parties in nonautomobile situations (*Biakanja* v. *Irving* (1958) 49 Cal.2d 647 [320 P.2d 16, 65 A.L.R.2d 1358]; *Lucas* v. *Hamm* (1961) 56 Cal.2d 583 [15 Cal.Rptr. 821, 364 P.2d 685]; and *Connor* v. *Great Western Sav. & Loan Assn.* (1968) 69 Cal.2d 850 [73 Cal.Rptr. 369, 447 P.2d 609, 39 A.L.R.3d 224]), finding the rules therein equally applicable to automobile liability insurers. (*Id.,* pp. 672-673, 674-677.)

In *Biakanja,* a notary public who undertook preparation of a will but negligently failed to have it properly attested was held directly liable to an intended beneficiary. (49 Cal.2d at pp. 650-651.) In *Lucas,* similar liability to an intended beneficiary was imposed upon an attorney who negligently drafted a will. (56 Cal.2d at pp. 589-591.) In *Connor,* relied upon heavily by real parties here, a lending institution was held directly liable to those members of the public who had purchased defectively constructed homes in a residential tract development, an undertaking in the planning and construction of which the lender had actively participated. (69 Cal.2d at p. 867.) The *Barrera* court reaffirmed its declaration in *Connor* that the lender "owed a duty to the purchasers 'to exercise reasonable care to prevent the construction and sale of seriously defective homes.' " (71 Cal.2d at p. 676.)

Real parties take the position that the cases of *Barrera* v. *State Farm Mut. Automobile Ins. Co., supra,* and *Connor* v. *Great Western Sav. & Loan Assn., supra,* imposed a duty upon petitioners (as past and present insurers of the aircraft being purchased by Happel) to conduct an investigation into the competence of Happel as a pilot. They further maintain that had such an investigation been conducted by Omni, no policy would have been issued, defendant Bates would have repossessed the aircraft, and real parties would not have been injured. Additionally, and alternatively, had Omni not issued its policy, Fireman's would not have subsequently issued its policy, Bates would have repossessed the aircraft, and real parties would not have been injured. For breach of this "duty" reasonably and seasonably to make an investigation—the argument concludes—Petitioners are directly liable in tort to real parties.

While real parties' argument may be viewed as constructed of speculation upon speculation—in itself an adequate basis for sustaining the general demurrers—a careful reading of *Barrera* and later kindred decisions compels the conclusion that the duty defined in *Barrera* must in any event be limited to automobile liability insurers who deny coverage for reasons arising out of their own negligence.

The Uniform Aircraft Financial Responsibility Act (Pub. Util. Code, § 24230 et seq.; The Act) does not embody all the public policy considerations accorded recognition in the automobile Financial Responsibility Law (Veh. Code, § 16000 et seq.). In the recent case of *National Ins. Underwriters* v. *Carter* (1976) 17 Cal.3d 380 [131 Cal.Rptr. 42, 551 P.2d 362], a declaratory relief action in which an aircraft insurer denied coverage, the Supreme Court upheld the validity of a pilot clause

which excluded coverage while the plane was piloted by other than a named insured, notwithstanding that the use was permissive.[3] The court compared the two financial responsibility laws and found the controlling public policy factors wanting in The Act.

The Supreme Court analyzed the public policy referred to in *Wildman v. Government Employees' Ins. Co.* (1957) 48 Cal.2d 31 [307 P.2d 359], a forerunner of *Barrera.* After discussing the differences between the aircraft and automobile responsibility laws, Justice Richardson, writing for the court, stated: "*Wildman* and the cases following it speak in the context of a statutory scheme which *expressly* requires certain coverage to be included in every *automobile* insurance policy. In contrast, in the absence of any general declaration of public policy mandating coverage of 'permissive users' for aircraft, we discern no reason to interfere with the parties' full freedom to contract for coverage on any terms not specifically prohibited by statute. [Citations.]" (17 Cal.3d at pp. 387-388, original italics.)

*National Ins. Underwriters,* while instructive, does not control the issue before us. Here, no coverage issue is present; we are confronted with alleged torts by petitioners, i.e., breach of their respective duties to investigate Happel's insurability. More pertinent to the issue of petitioners' duty to real parties are the cases of *Nipper* v. *California Auto. Assigned Risk Plan* (1977) 19 Cal.3d 35 [136 Cal.Rptr. 854, 560 P.2d 743]; *Skerlec* v. *Wells Fargo Bank* (1971) 18 Cal.App.3d 1003 [96 Cal.Rptr. 434]; *Matthias* v. *United Pacific Ins. Co.* (1968) 260 Cal.App.2d 752 [67 Cal.Rptr. 511]; and *Vice* v. *Automobile Club of So. Cal.* (1966) 241 Cal.App.2d 759 [50 Cal.Rptr. 837].

In *Vice,* plaintiff-pedestrian was injured by a vehicle operated by John Wyne (not a party to the action). The complaint against defendant alleged negligence in the issuance of its automobile liability policy to Wyne with knowledge that he was 87 years old, blind in one eye, had impaired vision in the other, was either partially or totally deaf, wore no hearing aid, held no operator's license since 1952, was unqualified to obtain such license, and was incompetent to operate an automobile. The appeal was from a judgment of dismissal entered after plaintiff's failure further to amend his second amended complaint upon the sustaining, with leave to amend, of defendant's general demurrer. The appellate court affirmed, upon the basis, first, that defendant insurer was entitled

---

[3]The exclusion in *National Ins. Underwriters* differed materially from those provided by the pilot clauses in petitioners' policies.

to issue a policy to an unqualified operator (241 Cal.App.2d, at pp. 763-765), and secondly, upon the basis of plaintiff's failure to allege Wyne's negligent operation of the vehicle. (*Id.,* at pp. 765-767.)

In *Matthias,* one injured as the result of a defective condition of property unsuccessfully sought recovery against the property insurer on the theory that the insurer was negligent in issuing its policy to the owner with knowledge of the condition and without requiring that repairs be made to correct it. (260 Cal.App.2d at p. 753.) On appeal, it was held that no duty was breached by issuance of the policy. The court stated that the insurer may have exercised poor judgment in issuing the policy, by insuring a bad risk, "but that does not establish a duty to plaintiff [citation]." There, as in the proceeding before us, the issue was direct insurer liability, not the existence of coverage. Liability was also denied with respect to the insurer's failure to direct repairs, the court stating that, "in the absence of some special relationship [citation] one is not under a duty to take affirmative action to aid or protect others [citation]. Similarly, there is no duty so to control the conduct of another as to prevent him from causing injury [citations]. The insurer-insured relationship has not been treated as one of those imposing such a duty [citation] . . . ." (*Id.,* at pp. 755-756.)

The Supreme Court in *Barrera,* discussing the reason for imposition upon automobile insurers of the duty there declared, used language which is helpful in assessing the importance of *Matthias* to the present proceeding. The court stated that the purpose is not "the avoidance of death or injury to a third person; rather, it is to avoid the possibility that the third person will be unable to obtain compensation for the loss" (71 Cal.2d at p. 680), thus emphasizing the nature of *Barrera* as essentially a coverage case, as opposed to *Matthias* and the matter before us.

In *Skerlec* v. *Wells Fargo Bank, supra,* 18 Cal.App.3d 1003, the plaintiffs were injured by the negligence of an uninsured motorist. They sought unsuccessfully to recover damages from the lender who had financed purchase of the vehicle. Their theory was that the bank had been negligent in lending to a borrower it knew was incapable of complying with the Financial Responsibility Law. The appellate court affirmed the judgment in favor of the bank, holding that no duty is imposed by law upon a lender to ascertain its prospective borrower's ability to comply with the Financial Responsibility Law. The *Barrera* case is not mentioned in *Skerlec,* but several of the cases relied upon in *Barrera* are treated, especially *Connor* v. *Great Western Sav. & Loan*

*Assn., supra,* 69 Cal.2d 850. The *Skerlec* court found *Connor* inapplicable, primarily because of the absence in *Skerlec* of any substantial participation by the lender in the injurious conduct. The charge that it was the lender's action which placed the uninsured motorist on the highway was rejected as a basis for liability. (18 Cal.App.3d at pp. 1005-1007.)

In *Nipper* v. *California Auto. Assigned Risk Plan (CAARP), supra,* 19 Cal.3d 35, as in *Vice,* one injured by an unqualified driver to whom the defendant insurer had issued a policy of automobile liability insurance sought recovery from *CAARP* and an insurance broker, claiming the existence of a duty to a class of which plaintiff was a member. It was alleged that Warkentin, the insured, was 79 years old, incapable because of lack of mental capacity of operating a motor vehicle; and that defendant broker, with full knowledge of Warkentin's disabilities, submitted his application to *CAARP* without disclosing that knowledge. Plaintiff further alleged that *CAARP* routinely failed to seek information from its applicants respecting their qualification and competence to drive, notwithstanding the requirements of Insurance Code section 11624, subdivision (a) [eligibility standards], and that had such information been obtained no policy would have issued to Warkentin. Plaintiff alleged also that had *CAARP* rejected Warkentin's application and notified the Department of Motor Vehicles, the department would have revoked his operator's license. The theory thus asserted by plaintiff was that *CAARP*'s failure to require information concerning the competence of its prospective insured, and its consequent failure to reject the application and notify the department of its rejection, foreseeably and proximately caused injury to plaintiff. The demurrers of *CAARP* and the broker were sustained without leave to amend and trial against Warkentin alone resulted in a judgment for $200,000, $170,000 of which was left unsatisfied.

The Supreme Court agreed that the omissions charged against *CAARP* stated no cause of action on either statutory or common law grounds. In discussing the statutory scheme, the court held that to impose "general civil liability to members of the motoring public for CAARP's failure to investigate and 'screen out' potentially dangerous drivers would serve to defeat [the] primary purpose of the assigned risk plan." (19 Cal.3d at p. 46.) In respect to *CAARP*'s common law obligation, also, the court rejected the existence of any duty of care the breach of which would result in direct tort liability to those injured by unqualified insureds. Further, the court, citing *Matthias,* stated that

"[p]laintiff has cited no authority, and we are aware of none, which suggests that an insurer (or other person to whom an application for insurance is tendered) either stands in a special relationship with the applicant or his potential victims, or alternatively owes any affirmative duty of inquiry or disclosure regarding the applicant." (*Id.,* at p. 47.)

The four cases last discussed lead to the conclusion that petitioners here are entitled to the relief sought. *Vice* and *Nipper* make clear that no duty is breached by an automobile insurer's failure to investigate the qualifications of prospective insureds before issuance of liability policies; they illustrate the rule that liability insurance may be issued to one unqualified to drive. The restriction added by *Barrera* in such instance serves only to prevent the insurer from seizing upon its insured's lack of qualification as a basis for denying *coverage.* It is not the issuance of a policy which brings the *Barrera* rule into action, but rather an insurer's attempt—by denying coverage—to avoid the consequences of its actions.

By analogy to the rule that liability insurance may be issued to any vehicle owner, it necessarily follows that aircraft liability insurance may be issued to any aircraft owner. Just as one who for some reason does not drive may employ a chauffeur to operate his automobile, one may purchase an aircraft with no intention to operate it himself. Real parties' reasoning herein, carried to its logical conclusion, would restrict the issuance of aircraft liability insurance to pilots alone, and to only those pilots meeting the qualifications established by the carrier. If aircraft insurance could be issued only to qualified pilots, there would be no need for a statute such as Insurance Code section 11584, set forth in footnote 2 above. Further, aircraft insurers would be required to continually check the qualification status of their insureds in regard to their experiential and medical certification, matters which may change from day to day.

As previously stated, the duty real parties seek to impose upon petitioners rests on the statutory public policy which compelled the result in *Barrera. National Ins. Underwriters* v. *Carter, supra,* dispels any notion that a similar policy is applicable to aircraft insurers. Absent a common law basis for the imposition of the claimed duty, real parties' position is therefore untenable. The *CAARP* decision and the earlier cases of *Vice, Matthias,* and *Skerlec* establish unequivocally that no such common law duty exists. We emphasize, also, that unlike the situation in *Connor* v. *Great Western Sav. & Loan Assn., supra,* neither petitioner, on the record

before us, can be said to have had any extensive involvement in the conduct which resulted in injury to real parties.

Given the lack of any statutory duty (*National Ins. Underwriters* v. *Carter, supra*), the absence of any common law duty (*Nipper* v. *California Auto. Assigned Risk Plan, supra*), and the lack of participation in the conduct causing the injury (*Connor* v. *Great Western Sav. & Loan Assn., supra*), we necessarily conclude that the duty allegedly breached by petitioners is not legally cognizable. The general demurrers should have been sustained without leave to amend in respect to the enumerated causes of action.

Let peremptory writs of mandate issue directing the superior court to vacate its orders overruling the petitioners' demurrers to the 15th, 16th, 17th and 18th causes of action of real parties' amended complaint, and to enter orders sustaining said demurrers without leave to amend.

Puglia, P. J., and Friedman, J., concurred.

The petition of the real parties in interest for a hearing by the Supreme Court was denied January 26, 1978. Tobriner, J., was of the opinion that the petition should be granted.