LEE, Justice, For the Court:
Billy J. Ervin filed suit in the Circuit Court of the first Judicial District, Hinds County, Honorable Russel Moore, presiding, against Bobbie M. Ervin, E. P. Reeves, Clyde C. Scott Insurance Agency, Inc., F. W. Williams State Agency, United States Fidelity & Guaranty Company, Mississippi Automobile Assigned Risk Plan, All Members of the Governing Committee of the Mississippi Automobile Assigned Risk Plan, and Does 1 through 250, for personal injuries sustained as a result of an automobile collision. Demurrers were interposed by all defendants except Bobbie M. Reeves and the demurrers were sustained by the trial court. The case was settled as to the Reeves and Ervin appeals here from the *1209 judgment in favor of all other defendants sustaining the demurrers. Those defendants cross-appeal, contending that motions filed by them to dismiss the declaration should have been sustained.
Ervin contends that the trial court erred in sustaining the several demurrers of the defendants. The declaration charged that he sustained injuries as a result of the negligent acts of Bobbie M. Reeves and E. P. Reeves, her son; that Bobbie M. Reeves, at the time of the accident, was seventy-nine (79) years of age, feeble minded, senile, and not physically and mentally qualified to operate a motor vehicle safely; that she applied for liability insurance through Clyde C. Scott Insurance Agency, Inc., the producing agent for assignment of Bobbie M. Reeves to the Mississippi Automobile Assigned Risk Plan [MARP], which is an unincorporated association of insurance companies authorized by the laws of the State of Mississippi and operating according to rules and regulations set forth in the minutes of the Insurance Commission of the State of Mississippi; and F. W. Williams State Agency; and United States Fidelity & Guaranty Company; and Does 1-250, various insurance entities doing business in the State of Mississippi and constituting companies involved in MARP.
The declaration further charged that the appellees were jointly and severally liable to appellant for the negligent failure to properly investigate the mental and physical capabilities of Bobbie M. Reeves as required by Section 9 of the Mississippi Automobile Insurance Plan, which would prohibit sale of insurance to, and successfully screen and investigate, applicants such as Bobbie M. Reeves, who are incompetent to operate motor vehicles safely; that all the defendants contributed to the issuance of an insurance policy in the amount of ten thousand dollars ($10,000) maximum, in violation of the intent of the statute; that the issuance of said policy at the instance of the defendants induced Bobbie M. Reeves to believe that she was a qualified driver and could safely operate her automobile; that such inducement and belief on the part of Bobbie M. Reeves directly and proximately caused the accident in which appellant was injured; and that the defendants, in issuing (and causing to be issued) the said policy of insurance, breached a duty which they owed to appellant and the general public.
Mississippi Code Annotated Section 63-15-65 (1972), as amended, provides for an assigned risk plan as follows:
“Insurance companies, authorized to issue motor vehicle liability policies in this state, shall establish an administrative agency and make necessary reasonable rules in connection therewith, relative to the formation of a plan and procedure to provide a means by which insurance may be assigned to an authorized insurance company for a person required by this chapter to show proof of financial responsibility for the future and who is in good faith entitled to motor vehicle liability insurance in this state, but is unable to secure it through ordinary methods. Such insurance companies shall establish a plan and procedure for the equitable apportionment among such authorized companies of applicants for such policies and for motor vehicle liability policies, including, but not limited to, voluntary agreements by insurance companies to accept such assignments. The premium for assigned risk plans shall not exceed the basic manual rate for risks of like classification at time of application, plus any surcharge as set by the insurance commission. When any such plan has been approved by the insurance commission, all insurance companies authorized to issue motor vehicle liability policies in the State of Mississippi, shall subscribe thereto and participate therein.
The insurance commission may determine, fix, prescribe, promulgate, change, and amend rates or minimum premiums normally applicable to a risk so as to apply to any and every assignment such rates and minimum premiums as are commensurate with the greater hazard of the risk, considering in connection therewith the experience, physical or other conditions of such risk of the person applying for insurance under any such plan.”
*1210 Mississippi Code Annotated Section 63-15-39 (1972) sets forth the manner of proving financial responsibility:
“Proof of financial responsibility may be furnished by filing with the department the written certificate of any insurance company duly authorized to write motor vehicle insurance in this state certifying that there is in effect a motor vehicle liability policy for the benefit of the person required to furnish proof of financial responsibility. Such certificate shall give the effective date of such motor vehicle liability policy, which date shall be the same as the effective date of the certificate, and shall designate by explicit description or by appropriate reference all motor vehicles covered thereby, unless the policy is issued to a person who is not the owner of a motor vehicle.”
Also, Mississippi Code Annotated Sections 63-15-49 and 63-15-51 (1972) provide methods of filing a bond as proof of financial responsibility and depositing money or securities as proof of financial responsibility, which methods are in addition to obtaining liability insurance coverage.
The case of Nipper v. California Automobile Assigned Risk Plan, et al., 19 Cal.3d 35, 136 Cal.Rptr. 854, 560 P.2d 743 (1977), has decided the question now before this Court. The case involves statutes of California similar to those of Mississippi and the defendant parties are essentially the same. Demurrers were sustained by the trial court of California. The judgment of the trial court was reversed by the Court of Appeals, Fifth District of California, on May 27,1976. Appellant apparently relied upon that decision as authority for his action because his declaration was filed October 7, 1976. However, a hearing was granted by the Supreme Court of California on July 21,1976, and on February 28,1977, the decision of the Court of Appeals was reversed and the judgments of dismissal entered by the trial court were affirmed.
We hold that the Mississippi statute and the Mississippi Automobile Assigned Risk Plan, adopted pursuant to the statute, have the same purpose as found by the California court in Nipper:
“The general purpose of the plan was to provide automobile insurance for those marginal motorists who, because they were considered ‘bad risks,’ were otherwise unable to secure and maintain such insurance. (Id., at p. 881, 216 P.2d 882; see Billington v. Interinsurance Exchange (1969) 71 Cal.2d 728, 740, 79 Cal.Rptr. 326, 456 P.2d 982.) These persons included ‘violators of traffic laws, . . . persons with minor physical disabilities, the young and the old drivers, and, of course, those who had bad accident records.’ (Cal. State Auto., supra, 96 Cal.App.2d at pp. 881-882, 216 P.2d at p. 886.) To this extent the plan complements the state’s financial responsibility laws by providing a limited fund of insurance to compensate persons injured by drivers who otherwise would be uninsurable.

It is apparent that the Insurance Commissioner, who is authorized by law to issue the plan, has assumed that the eligibility standards set forth in section 11624 are permissive standards which need not be considered by CAARP in processing applications for insurance. In fact, by reason of the 1971 amendments to the Administrative Code, CAARP must (with minor exceptions not herein relevant) provide insurance to all licensed drivers. As a corollary, with few exceptions, those carriers authorized by law to write liability insurance must participate in the plan (§ 11625) on the apparent theory that, for the purpose of extending insurance coverage as widely as possible, insurers in sharing the greater risks in the liability field must ‘take the bad with the good.’ ” 19 Cal .3d at 41, 44-45, 136 Cal.Rptr. at 856, 858-859, 560 P.2d at 745, 747-748.
In California, the Department of Motor Vehicles and not the California Auto Assigned Risk Plan has the primary authority and statutory responsibility of determining which California drivers are capable of driving safely. The Commissioner of Public Safety of Mississippi, and not appellees, has a similar responsibility and authority. Mis *1211 sissippi Code Annotated Section 63-1-1 (1972), et seq.
The California Supreme Court further said:
“The imposition upon CAARP, however, of general civil liability to members of the motoring public for CAARP’s failure to investigate and ‘screen out’ potentially dangerous drivers would serve to defeat that primary purpose of the assigned risk plan. To avoid such tort liability, CAARP would be under almost irresistible compulsion to reject doubtful or borderline applicants. (See Matthias v. United Pacific Ins. Co. (1968) 260 Cal. App.2d 752, 754-755, 67 Cal.Rptr. 511.) This in turn would reduce rather than increase the number of insured drivers on California’s streets and highways. In our view, the strong public policy of extending insurance coverage which underlies the existence of the plan itself outweighs any countervailing policy favoring the utilization of CAARP, in effect, as an auxiliary arm of the DMV in the general policing or control of the driving qualifications of California’s motorists. Since we cannot assume that those who are desiring coverage will cease driving, the inevitable result will be to increase the number of uninsured motorists among the very class possessing the highest risks.
We conclude that CAARP had no statutory obligation to inquire regarding Warkentin’s driving ability.” 19 Cal.3d at 46, 136 Cal.Rptr. at 859, 560 P.2d at 748.
If we followed the argument of appellant — that appellees are guilty of negligence under the allegations of the declaration here — it could also be said that any insurance company which issued a policy of liability insurance to an incompetent driver or any individual or company executing bond as proof of financial responsibility, or any individual or company depositing money or securities as proof of financial responsibility for an incompetent driver likewise could be held guilty of negligence which would sustain judgments against them.
Appellant contends that on demurrer the facts pleaded are taken as true; that he alleged facts constituting negligence on the part of appellees, and a duty incumbent upon them which was violated; and that the demurrers should have been overruled. We agree that on demurrer, all facts well pleaded are admitted as true. However, questions of law arising from those facts are for the court to decide. We hold that the allegations of the declaration failed to state a cause of action against appellees and imposed no duty, either statutory or at common law, against them, and that the demurrers were properly sustained.
The cross-appellants contend that the trial court erred in overruling their motions to dismiss, quash process and returns, and for additional time to plead. Since the decision on direct appeal sustaining the judgment of the trial court in dismissing the declaration is dispositive of the ease, it is not necessary for us to consider the cross-appeals.
The case is affirmed on direct appeal and the cross-appeals are dismissed.
AFFIRMED ON DIRECT APPEAL; CROSS-APPEALS DISMISSED.
PATTERSON, C. J„ SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING, and COFER, JJ., concur.