**Charlotte HAMMERS, Appellant,**

v.

**FARM BUREAU TOWN & COUNTRY INSURANCE COMPANY OF MISSOURI, Respondent.**

No. 57235.

Missouri Court of Appeals,
Eastern District,
Division One.

May 9, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 14, 1990.

Application to Transfer Denied
July 31, 1990.

Eugene H. Fahrenkrog, Jr., St. Louis, Michael A. Gross, Clayton, for appellant.

Ronald R. McMillin, Jefferson City, for respondent.

GARY M. GAERTNER, Presiding Judge.

In this civil action, the court is presented with the question of whether an insurance company, which provided coverage to an incompetent driver, was civilly liable for injuries sustained by a third person as a result of the insured's negligent operation of a motor vehicle. We conclude that no such liability exists and affirm the trial court's judgment of dismissal.

In her petition, the plaintiff, Charlotte Hammers, alleges the following facts which, for purposes of reviewing the lower court's ruling, we must accept as true. *Parker v. Sherman*, 456 S.W.2d 577, 578 (Mo.1970). On September 4, 1988, plaintiff was a passenger in a motor vehicle being

driven by her husband. They were travelling southbound on Highway 67 and were driving in the passing lane. A car being driven northbound on Highway 67 by Theresa Bennett, whom the petition alleges was "extremely senile and physically incapable of operating a motor vehicle in a safe and careful fashion," crossed into their lane, collided with them and caused them serious physical injuries. The petition further alleges that Miss Bennett obtained an automobile policy from respondent, Farm Bureau Town & Country Insurance Company (FBTC) within six months of the accident and that FBTC had knowledge of Miss Bennett's inability to operate a motor vehicle in a safe manner at the time of the purchase.

On June 6, 1989, the plaintiff filed a petition alleging that FBTC was negligent in selling Miss Bennett insurance because: 1) They knew of her senile condition; 2) they knew she would not be able to obtain an operator's license or plates for her vehicle without insurance; and 3) they knew she would not have to take a driver's examination to obtain her license. FBTC filed a motion to dismiss this suit for failure to state a cause of action on June 24, 1989. The circuit court, on August 14, 1989, sustained FBTC's motion to dismiss and this appeal followed.

Plaintiff contends that FBTC owed a common law duty to refrain from selling automobile liability insurance to obviously unfit drivers and that this duty "is consistent with the statutory scheme by which this State attempts to minimize the likelihood that dangerous drivers and dangerous vehicles will be on the roads." The crux of plaintiff's argument is that, as RSMo § 303.025 states that insurance is required to operate a motor vehicle and as RSMo § 303.026 makes obtaining or renewing a license plate dependent upon the owner's certification that she has obtained insurance, had it not been for FBTC's issuance of a policy, the accident and resulting physical injuries would never have occurred. Ignoring the extensive proximate cause problems, we find that no such duty existed.

In *Nipper v. Cal. Auto. Assigned Risk Plan*, 19 Cal.3d 35, 136 Cal.Rptr. 854, 560 P.2d 743 (1977), the California Supreme Court was faced with a similar situation. Under California's "California Automobile Assigned Risk Plan" (CAARP), high risk drivers who were otherwise unacceptable risks for ordinary coverage could obtain automobile liability insurance. One of the beneficiaries of this plan caused an accident and injured the plaintiff, Robert Nipper. Nipper then sued CAARP for negligently providing the driver with insurance and, thus, allowing the driver to operate a motor vehicle in an unsafe manner. After rejecting Nipper's statutory based claims, the court addressed CAARP's common law obligations and found that none existed. *Nipper*, 136 Cal.Rptr. at 859–860, 560 P.2d at 748–749. *See* also *Fireman's Fund Insurance Co. v. Superior Court of California*, 75 Cal.App.3d 627, 142 Cal.Rptr. 249 (1978); *Ervin v. United States Fidelity and Guaranty Co.*, 365 So.2d 1208 (Miss. 1978).

In the present case, plaintiff first alleges that, because FBTC knew that: a) Miss Bennett was senile; b) RSMo § 303.026 makes obtaining or renewing license plates dependant upon the owner's certification that she has obtained insurance; and c) she would not have to submit to a driver's examination to obtain her license, FBTC had a duty to protect the public from her unsafe driving habits by not insuring her and thus, under RSMo § 303.025, not allowing her to have the necessary financial responsibility to drive. Several policy reasons militate against this court agreeing with appellant's position.

Appellant acknowledges that one of the primary purposes of Missouri's financial responsibility law is to increase the likelihood that automobile accident victims will be able to collect compensation for their damages. To require that automobile insurers screen all applicants and reject those they feel are "obviously unfit" would defeat the purpose of the financial responsibility law. Automobile insurers would doubtlessly be compelled to reject, not only those drivers they felt were "obviously unfit", but also those drivers that were doubt-

ful or borderline applicants. The result being that the drivers that created the highest risk on the road would be those driving without insurance.[1] It must also be noted that RSMo § 302.291 gives the director of motor vehicles, not insurance companies, the authority to suspend or revoke the license of incompetent drivers.

Plaintiff next relies on § 302 of the Restatement, (Second) of Torts which provides:

> § 302 A. Risk of Negligence or Recklessness of Others
> An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the negligent or a reckless conduct of the other or a third person.

Plaintiff's reliance on section 302 is, however, misplaced. Section 302, is concerned only with the negligent character of an actor's conduct but not with whether or not the actor has the duty to avoid the unreasonable risk. Restatement, Second, of Torts, § 302. Comment a. The section of the Restatement which refers us to the duty to control the conduct of third parties and would be applicable in this case is § 315. Section 315 states:

> § 315. General Principle
> There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
> (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
> (b) a special relation exists between the actor and the other which gives to the other a right to protection.

Plaintiff has cited absolutely no authority, and this court is aware of none, which suggested an insurance company stands in a special relationship with the applicant or with the plaintiff. Lacking a special relationship, § 315 would not impose a duty to control the conduct of a third party. In

addition, the policy reasons referred to above apply with equal force here.

Finding that insurers have no duty to refrain from selling insurance to an obviously unfit operator of motor vehicle, this court affirms.

REINHARD and CRIST, JJ., concur.

---

1. We refuse to adopt the plaintiff's unreasonable inference that a person, because they seek insurance in the first place, is law abiding and would not violate the law by driving without insurance.